## THE PEOPLE v. WILLIAM CAHOON.

*Criminal law—Misconduct of prosecuting attorney—Evidence.*

1. Zeal in a prosecuting attorney is entitled to the highest commendation, but it must be exercised within proper limits.[1]

2. Witnesses are entitled to respectful consideration, and it is the duty of courts to see that they are protected from the insinuations and attacks of counsel, whether direct or in the form of a suggestive question.

3. Juries very properly regard the prosecuting attorney as unprejudiced, impartial, and non-partisan; and insinuations thrown out by him regarding the credibility of witnesses for the defense are calculated to prejudice the respondent.

4. The following questions asked of respondent's wife by the prosecuting attorney on cross-examination, she being the only person present at the affray except the parties thereto, namely:

    *a*—Is it not a fact that you were not there at all?

    *b*—Has this been written out?

---

[1] See, as bearing upon this question, *People v. Dane*, 59 Mich. 550; *People v. Carr*, 64 Id. 702; *People v. O'Brien*, 68 Id. 468; *People v. Vanderhoof*, 71 Id. 159; *People v. Montague*, Id. 447; *People v. Evans*, 72 Id. 368; *People v. Swetland*, 77 Id. 53; *People v. Treat*, Id. 348; *People v. Moyer*, Id. 571; *People v. Welch*, 80 Id. 616; *People v. Hess*, 85 Id. 128.

*c*—Is it not a fact that you and your husband have con-cocted this whole story?

*d*—You have been a witness for your husband in every law-suit he has had, have you not?

—Are held to have reflected upon the character of the witness, and to bring this case within the rule laid down in *Sullivan v. Deiter*, 86 Mich. 404.

5. Remarks by a prosecuting attorney, accompanying a request to swear impeaching witnesses whose names are not indorsed on the information, calculated to impress the jury with the belief that the people are prepared to impeach the respondent by his own neighbors, and that, while the procurement of witnesses for that purpose is usually difficult, it is an easy matter in his case, are indefensible, as is his action in recalling the respondent after the refusal of the court to admit the proposed impeaching testimony, and questioning him as to whether he had not been impeached in other cases, and if, in a number of other instances, his neighbors had not been brought into court for the purpose of impeaching him.

6. This case is distinguished from *People v. Partridge*, 86 Mich. 243, for reasons stated in the opinion.

Exceptions before judgment from Jackson. (Peck, J.) Argued November 12, 1891. Decided November 20, 1891.

Respondent was convicted of assault with intent to do great bodily harm less than the crime of murder. Conviction reversed, and new trial ordered. The facts are stated in the opinion.

*T. E. Barkworth,* for respondent.

*A. A. Ellis,* Attorney General, and *James A. Parkinson,* Prosecuting Attorney, for the people.

McGrath, J. From a careful examination of this record it is clear that the defendant has not had a fair and impartial trial.

The information contains two counts. The first sets forth an assault with intent to kill and murder, and the second assault with intent to do great bodily harm. The jury found defendant guilty under the second count.

It is unnecessary to recite the testimony. The affray occurred upon a haymow in a barn, whither the parties had repaired to divide some hay. After the division of the hay some hot words passed between the parties relative to other deals. Both lived upon the farm; defendant conducting it, and Maybee living in a separate house, and evidently working upon shares. Maybee, the party who claimed to have been assaulted, was the only witness for the prosecution. He insisted that Cahoon was the aggressor. Defendant claimed that he was sick at the time; that Maybee followed him (defendant) around the bin, threatening to attack him, whereupon defendant seized a pitchfork, and told Maybee to keep away from him; that Maybee thereupon rushed at defendant, and in the altercation Maybee fell through the hole through which the hay was fed to the mangers below.

Defendant's wife, knowing that the parties had had trouble, followed them, without the knowledge of either, and at the time of the affray stood upon the stairs leading to the mow, where she could both see and hear. She corroborates her husband in the main, although she gives some incidents which neither Maybee nor her husband mentioned. Upon cross-examination of the wife of the defendant the prosecuting attorney asked the following questions:

"*Q.* Is it not a fact that you were not there at all?

"*A.* It is a fact that I was there.

"*Q.* Has this been written out?

"*A.* No, sir.

"*Q.* Is it not a fact that you and your husband have talked this thing over and over again in the house among yourselves?

"*A.* Yes, sir; we have talked it over.

"*Q.* Is it not a fact that you and your husband have concocted this whole story?

"*A.* No, sir.

"*Mr. Barkworth:* I object, as immaterial and not proper cross-examination.

"*Q.* You have been a witness for your husband in every lawsuit he has had, have you not?

"*A.* No, I think not.

"*Q.* Is it not a fact that your husband has had a great many lawsuits?

"*A.* Yes, sir; he has had some.

"*Q.* And you have been a witness in every one of them? (Objected to as immaterial. Overruled. Exception taken.)

"*A.* No, sir; I have not."

The following is an extract from the record, after the defendant had rested his case:

"*Mr. Parkinson, Prosecuting Attorney:* Now, your honor, I desire to put some witnesses on the stand. These witnesses are not rebuttal witnesses as to any fact in this case that I have learned at any time. *I want to put these witnesses on to impeach Mr. Cahoon's general reputation for truth and veracity. I intended to do that if Mr. Cahoon went on the stand.* I did not know that Mr. Cahoon was to go on the stand, and therefore had them here as a mere possible contingency. I had no actual knowledge that he was to go on the stand, however, until he was sworn. Of course, I am well aware that rebuttal witnesses should be put on the information, but these witnesses are not rebuttal witnesses to any fact. *These are impeaching witnesses, and as a matter of necessity they must be neighbors, persons acquainted with the respondent, and acquainted with his reputation;* they cannot be strangers; they must be men that he knows; and consequently there can be no cause to say or for claiming surprise.

"*Mr. Barkworth:* Now, your honor, I object to the prosecuting attorney's statement of this matter. His remarks here are improper before this jury, and I desire my exception to these remarks.

"*The Prosecuting Attorney:* I might consume considerable time in discussing this question, but I do not think it necessary. I cannot see how it is possible that witnesses that might be necessary, or that witnesses must be put on the information and subpœnaed on a mere contingency. I am frank to say, your honor, that I never saw the names of these persons until they were handed me on this paper, and I do not think it is possible to put these names on at the time of the filing of the information.

*It is not always that you can make up a list of persons of that kind, although in this case it was easy enough.*

"*Mr. Barkworth:* I take an exception to that remark.

"*The Prosecuting Attorney: I did not make that remark because I was claiming that it was difficult to get these witnesses.* I am not putting my request on that ground.

"*Mr. Barkworth:* Please note my exceptions.

"*The Prosecuting Attorney:* And then, supposed I would have furnished a list of these men. I would have been compelled to bring them here. I would have been compelled to have them here, and sit during the entire trial, and perhaps never use them, simply because they were on the information. Now, I insist that there is no rule of law that courts will lay down that I must guess who the defendant's witnesses may be, and place names on the information who might, under any possible contingency, become witnesses. The result would be that a great many times injustice would be done, and we could not try our case. I didn't know until the trial began that we wanted a witness. If that were the rule, the result would be just as it was *with this woman, Mrs. Cahoon, put on the stand without the least intimation that we wanted to rebut any testimony that she could give.* I would have had to guess what she would swear to. Of course, if Mr. Cahoon had not been put on the stand, we would not have needed a witness, and I think the rules of law admit of such contingencies. These witnesses are not to rebut any fact, but simply *to impeach the character of Cahoon as to truth and veracity;* and I do not think the court ought to hold that they must be put on the information.

"*Mr. Barkworth:* I take exceptions to all these remarks.

"(Remarks of court overruling the application of the prosecution.)

"*The Prosecuting Attorney:* I desire to recall Mr. Cahoon.

"*Q.* In cases heretofore is it not a fact that you have been impeached?

"*Mr. Barkworth:* I object to these questions.

"*Q. Is it not a fact that on a trial before Justice Palmer, in legal proceedings since I have been prosecuting attorney, during my other term of office, within the last two years, that five or six times your neighbors came into court to swear that your general reputation was bad? Is that not true?*

"*Mr. Barkworth:* I object; I object.

"*The Court:* I sustain the objection.

"*Mr. Barkworth:* I take exception to the way the prosecuting attorney puts these questions.

"*The Court:* I don't think that is proper cross-examination.

"*The Prosecuting Attorney:* I have seen that question put.

"*Mr. Barkworth:* I have never seen it put.

"*Q. Mr. Cahoon, is it not true, in legal proceedings, several times, your neighbors have sworn to your general bad reputation?*

"*Mr. Barkworth:* Same objection.

"*The Court:* Sustained."

Zeal in a prosecuting attorney is entitled to the highest commendation, but that zeal must be exercised within proper limits. In civil cases counsel often take too much latitude in the cross-examination of witnesses. Witnesses are entitled to respectful consideration, and it is the duty of courts to see that they are protected from the insinuations and attacks of counsel, whether the insinuation or attack is direct or is in the form of a suggestive question. In criminal cases the prosecuting attorney is a public officer, acting in a *quasi* judicial capacity. Juries very properly regard him as unprejudiced, impartial, and non-partisan; and insinuations thrown out by him regarding the credibility of witnesses for the defense are calculated to prejudice the defendant. Here the prosecution depended upon one witness. The defendant and his wife were the only persons at the affray. The quest'ons put to Mrs. Cahoon, viz.: "Is it not a fact that you were not there at all? Has this been written out? Is it not a fact that you and your husband have concocted this whole story? You have been a witness for your husband in every lawsuit he has had, have you not?"— reflected upon the character of the witness, and bring the case within the rule laid down in *Sullivan v. Deiter,*

86 Mich. 404. See, also, *Leahy v. State* (Neb.), 48 N.
W. Rep. 390; *People v. Montague*, 71 Mich. 447; *People
v. Quick*, 58 Id. 321; *People v. Dane*, 59 Id. 550. The
witness does not appear to have attempted to evade any
questions. When asked if she and her husband had not
talked the matter over, she replied promptly that they
had. The prosecuting attorney had an undoubted right
to follow up this answer, and bring out that talk; but
clearly he had no right to discredit the witness by innu-
endo. He could not have expected the witness to have
answered that what she had sworn to was written out
for her, or that she and her husband had concocted the
story. The questions as to her husband's lawsuits, and
as to whether she had not been a witness in all of them,
were manifestly improper.

What occurred after the defense had rested is equally
indefensible. However innocent the purpose of the prose-
cuting attorney may have been, his remarks were calcu-
lated to impress the jury with the belief that the people
were prepared to impeach the defendant by his own neigh-
bors, and that the procurement of witnesses for that pur-
pose was usually difficult, but in the present case was an
easy matter. When the court declined to admit the testi-
mony, the prosecuting attorney recalled the defendant,
and proceeded to question him as to whether he had not
been impeached in other cases, and if, in a number of
other instances, his neighbors had not been brought into
court for the purpose of impeaching him. This was clearly
an attempt to break down this witness by methods and
innuendo, rather than by competent testimony, and could
not have been less than prejudicial.

It is insisted also that the verdict cannot be sustained,
for the reason that the offense proven by complaining
witness was that charged in the first count, and that

the case is within the rule laid down in *People v. Partridge,* 86 Mich. 243. The cases are clearly distinguishable. Here defendant in both counts was charged with an intent to do something that was not done. In the Partridge case the respondent was charged in the first count with an offense from the commission of which the intent is presumed, and in the second count with a lesser offense, without intention to commit the crime charged in the first count. The proofs in that case conclusively showed that the crime charged in the first count had actually been committed, but the jury found the defendant guilty of the offense charged in the second count; in other words, the jury found the defendant guilty of the lesser offense without intending to commit the greater, while the evidence showed that he had actually committed the greater, an intent to do which the law presumes from the doing of the act. In the present case the defendant admitted the use of the pitchfork, but denied the threat to kill. The jury was not compelled to accept either account of the affray in all its details. The intent could only be gathered from what was said and done. The testimony was conflicting. The jury concluded that there was no intent to kill, but that there was intent to do great bodily harm. The intent to do either could not be presumed, but must be found; and the jury might have found defendant guilty of neither offense, but of an assault simply. This contention cannot, therefore, be sustained.

For the errors referred to the verdict must be set aside, and a new trial had upon the second count in the information.

The other Justices concurred.