(February 4, 1903.)

## STATE v. IRWIN.

[71 Pac. 608.]

MISCONDUCT OF PROSECUTOR—IMPUTING OTHER CRIMES TO DEFENDANT —ADMISSION OF EVIDENCE — PREJUDICIAL ERROR — DUTY OF PROSECUTOR.—Where an assistant prosecutor asks the son of the accused, on cross-examination, if he had not stated to A. that he suspected his father of having committed a similar offense with other girls, one a member of his family, and that such conduct on the part of the accused caused the death of witness' mother, and that if at such conversation witness did not cry, and say, "I can't go against my father, even if he is guilty," and repeatedly asks substantially the same questions, such conduct of the prosecutor is reversible error. Such questions are improper cross-examination, and should not be allowed under the guise of impeaching the witness. It is the duty of the prosecutor to see that a defendant has a fair trial, and that nothing but competent evidence is submitted to the jury; and above all things he should guard against anything that would prejudice the minds of the jurors, and tend to hinder them from considering only the evidence introduced. He should never seek by any artifice to warp the minds of the jurors by inference and insinuations.

(Syllabus by the court.)

APPEAL from District Court, Washington County.

Frank Harris and A. A. Praher, Attorneys for Appellant.

As to the misconduct of the prosecuting attorney in the cross-examination of witnesses. (*People v. Bowers,* 79 Cal. 415, 21 Pac. 752; *People v. Mullings,* 83 Cal. 138, 17 Am. St. Rep. 223, 23 Pac. 229; *People v. Wells,* 100 Cal. 459, 34 Pac. 1078; *Heller v. People,* 22 Colo. 11, 43 Pac. 124; *People v. Ah Len,* 92 Cal. 282, 27 Am. St. Rep. 103, 28 Pac. 286; *State v. Young,* 99 Mo. 666, 12 S. W. 879; *State v. Jackson,* 95 Mo. 623, 8 S. W. 749; *People v. Abell,* 113 Mich. 80, 71 N. W. 509; *Smith v. People,* 8 Colo. 457, 8 Pac. 920.) Also on the question of the sufficiency of the evidence in this case, we call the court's attention to the following Idaho cases: *State v. Anderson,* 6 Idaho, 706, 59 Pac. 180; *State v. Thompson,* 14 Wash. 285, 44 Pac. 533; *State v. Baker,* 6 Idaho, 496, 56 Pac. 81; *State v. Anthony,* 6 Idaho, 383, 55 Pac. 884; *Holder v. State,* 58 Ark. 473, 25 S. W. 279; *Flint v. Commonwealth* (Ky.), 23 S. W. 346; *People v. Cahoon,* 88 Mich. 456, 50 N. W. 384; *Leahy v. State,* 31 Neb. 566, 48 N. W. 390.

John A. Bagley, Attorney General, for the State.

As to the alleged misconduct on the part of the prosecuting attorney, I cite the following authorities as bearing upon the question: 8 Am. Ency. of Pl. & Pr. 109, 116-118, and cases cited; *Siberry v. State,* 133 Ind. 677, 33 N. E. 681, 21 Am. Ency. of Pl. & Pr. 975; *Ferguson v. Hirch,* 54 Ind. 337; *Combs v. State,* 75 Ind. 215; *People v. Lee Sare Bo,* 72 Cal. 623, 14 Pac. 310; *People v. Goldenson,* 76 Cal. 328, 353, 19 Pac. 161; 2 Am. Ency. of Pl. & Pr. 73, note 4; *Tuller v. Ginsburg,* 99 Mich. 137, 57 N. W. 1099. Time of making objection: *Choen v. State,* 85 Ind. 209; *State v. Hawkins,* 18 Or. 476, 23 Pac. 475; *Commonwealth v. Mudget,* 174 Pa. St. 211, 34 Atl. 588; *Norris v. State,* 32 Tex. Cr. Rep. 172, 22 S. W. 592. Necessity of making objection: *Commonwealth v. Tripp,* 157 Mass. 515, 32 N. E. 905; *People v. Biles,* 2 Idaho, 114, 6 Pac. 120; *State v. Haverly,* 4 Idaho, 484, 42 Pac. 506.

AILSHIE, J.—The defendant was convicted of the crime of rape, alleged to have been committed on one Dora Irwin, a female child, who at the time of the alleged offense was of the

age of fourteen years and eleven months, and he was thereupon sentenced to serve a term of ten years in the state penitentiary.

The offense is alleged to have been committed at Meadows, in the county of Washington, on the fourth day of July, 1902. Defendant appeals from the judgment, and from an order denying his motion for new trial, and in this court the two principal questions, as presented for our consideration, are: "1. That the court erred in refusing to instruct the jury that it was necessary for the prosecution to prove that at the time of the alleged offense the prosecutrix, Dora Irwin, was not the wife of the defendant, and that the court erred in refusing to grant a new trial upon the ground that the evidence did not show that said Dora Irwin was not at the time of the commission of the alleged offense the wife of defendant. 2. Misconduct on the part of the assistant prosecutor in the repeated asking of certain questions on cross-examination of the witness Daniel Irwin imputing to the defendant other like crimes, and to the rulings of the court in permitting such questions to be answered."

Counsel for defendant contend that under the provisions of section 6765 of the Revised Statutes, as amended, it is necessary for the information to allege that the female upon whom the offense is charged to have been committed was not at the time thereof the wife of the defendant, and that the court should have instructed the jury that it is necessary for the state to prove such fact the same as any other fact in the case. We are not called upon in this case to pass upon that question, for the reason that the information charges that the offense was committed upon "one Dora Irwin, a female, not the wife of him, the said William Irwin," and the court instructed the jury that such fact must be proven and we think it was proven. In instruction No. 8 we find the following language: "To warrant a conviction of the defendant, therefore, of the crime charged in the information, to wit, rape, the state must prove beyond a reasonable doubt: . . . . 2. That at said time the said Dora Irwin was a female child under the age of eighteen years, and not the wife of the defendant." We have carefully examined the record in this case, and think the evidence as given by the defendant himself

sufficiently establishes the fact that the said Dora Irwin was not the wife of defendant. We find in the record the defendant referring to the prosecutrix as "Miss Dora" and "my granddaughter" and "the girl," and we find her, on the other hand, referring to the defendant as "my uncle Bill."

The second contention of the defendant, however, is a much graver question, and one on which we have examined many authorities before arriving at the conclusion which we are compelled to announce in this case. The defendant called his son, Daniel Irwin, as a witness, and examined him, and thereupon he was cross-examined by the assistant prosecutor, and, among other things, we find that in the course of such cross-examination the following questions were put, and answers, objections, and rulings by the court were made: "Q. Did you not, in the course of that conversation with Mary Phillips, say also, in substance and effect, that you suspicioned your father of having done the same thing with other girls, mentioning one of your family? A. No, sir. Q. You swear to that? A. Yes, sir. Q. Did you not on that occasion cry bitterly? A. I might have shed a few tears; but very few, I think. Q. Did you not, in the course of that conversation with Mary Phillips, say also, in substance and effect, that your father's actions with the other girl—with the member of the family referred to—had caused your mother's death? Mr. Irwin: We object to that as immaterial, incompetent, and irrelevant, and not proper cross-examination of the witness. (Objection sustained.) Q. Did you see Miss Phillips since you have been here in Weiser? A. Yes, sir. Mr. Irwin: At this time we wish to take an exception to the special counsel for the prosecution in propounding questions to the witness, as being an invasion of the rights of the defendant, and for the purpose of attempting to prejudice the rights of the defendant in this action, being a matter not relevant, and pertaining to no matter under discussion before the court. The Court: The court sustains objections to such questions as the court deems improper. Mr. Irwin: I am not making any objections as regards the court. I am taking an exception particularly to the conduct of counsel in that particular matter in embodying in his questions the same elements to

which the court has sustained objections in the preceding ques-, tion. Q. I will ask you if you saw Miss Phillips in this town on the evening of March 12th of the present year? A. I don't know. I believe I did. I have seen her several times since I have been in town. I am not positive of the date. Q. I will ask you whether or not, on the evening of March 12, 1902, in room 19 of the Weiser Hotel, in this county and state, you said to Mary Phillips, in the course of a conversation had between you and Mary Phillips in that place and on that occasion, the conversation being directed to the question of your father's guilt or innocence upon this charge, in substance and effect as follows: 'I can't go against my father, even if he is guilty.' Did you so state? Mr. Irwin: We object to that question as immaterial, irrelevant, and incompetent. (Objection overruled; to which ruling of the court counsel for defendant excepts.). Q. Did you so state in substance and effect? (No answer.) Q. Again I ask you whether you stated in substance and effect— I will repeat: 'I cannot go against my father, even if he is guilty'? A. No, sir; I did not. Q. Nothing to that effect? A. No, sir. Q. Did you cry there on that occasion in talking to her? A. No, sir. Q. You didn't cry on that occasion in talking to her? A. No, sir. She was there for the information she didn't get. Q. You was playing detective again, was you? A. No, sir; I was not. She was. Q. How do you know she was? A. I could tell from the lay of things from start to finish. She invited me to the room. I went there. Q. Did she say on that occasion that she thought your father was guilty? Mr. Irwin: We object to that as incompetent, irrelevant, and immaterial, and as hearsay. (Objection sustained.) Q. Then you swear positively that you had no such conversation, in substance and effect, as that; that is, the conversation that you have denied? A. Yes, sir; I do." It is contended by counsel for defendant that the questions here asked repeatedly of defendant's son tended to prejudice the substantial rights of defendant before the jury, and to throw into the jury-box the insinuation that the defendant had, prior to the commission of the act alleged, committed similar offenses, and that his conduct in that respect had caused the

death of the witness' mother, defendant's wife, and that the wit-ness himself believed in the guilt of the defendant, and that he had stated as much, and that he had cried and wept in his conversations with others over the conduct of his father.

We are cited to a great many authorities discussing the con-duct of prosecutors and rulings of the courts upon questions very similar to the one at bar. In the case of *People v. Wells,* 100 Cal. 459, 34 Pac. 1078, McFarland, J., speaking for the court in discussing the conduct of the prosecutor in asking the defendant on cross-examination if she had not committed a like offense in another state, says: "It would be an impeachment of the legal learning of the counsel for the people to intimate that he did not know the question to be improper and wholly unjusti-fiable: Its only purpose, therefore, was to get before the jury a statement in the guise of a question that would prejudice them against appellant. If counsel had no reason to believe the truth of the matter insinuated by the question, then the artifice was most flagrant; but if he had any reason to believe in its truth, still he knew that it was a matter which the jury had no right to consider. The prosecuting attorney may well be assumed to be a man of fair standing before the jury, and they may well have thought that he would not have asked the question unless he could have proved what it intimated if he had been allowed to do so. . . . . . Where the clear purpose is to prejudice the jury against the defendant in a vital matter by the mere asking of the questions, then a judgment against the defendant will be reversed, although objections to the ques-tions were sustained, unless it appears that the questions could not have influenced the verdict." In *People v. Bowers,* 79 Cal. 415, 21 Pac. 752, the defendant was prosecuted upon the charge of murder. The supreme court of California, in discussing the conduct of the prosecutor in stating matters in the presence of the jury which were not borne out by the record, said: "Still more objectionable was the conduct of the prosecuting attorney. It is true, the court properly interfered, rebuking the attorney and instructing the jury to pay no attention to the statements. But the statements were well calculated to influence the jury in a case of this character, and it is impossible for us to say

that no injury resulted to the defendant therefrom." In *People v. Mullings,* 83 Cal. 138, 17 Am. St. Rep. 223, 23 Pac. 229, the prosecuting attorney asked the defendant, while on the witness stand, the following questions: "What did you say to your wife when you went home that night? Did you not tell your wife that you had killed a man?" The defendant objected to these questions, and the objection was overruled. The supreme court of California, in discussing this action of the prosecutor and ruling of the court, say: "Counsel for respondent contends that the questions asking defendant about conversations with his wife did not injure him, because his answers to them were mostly in the negative. But what answers were expected? After defendant testified that he did not kill John Moore, can any sane man think that the district attorney supposed for a moment that defendant would answer affirmatively a long list of questions framed upon the presumption that he did kill him? Why, then, did he ask them? And, if the questions and answers did not help to strengthen the case against defendant, why did not the prosecution consent to have them stricken out? It is quite evident that the questions, and not the answers, were what the prosecution thought important. The purpose of the questions clearly was to keep persistently before the jury the assumption of damaging facts which could not be proven, and thus impress upon their minds the probability of the existence of the assumed facts upon which the questions were based. To say that such a course would not be prejudicial to defendant is to ignore human experience and the dictates of common sense." The case of *Leahy v. State,* 31 Neb. 566, 48 N. W. 390, was a rape case, and in many particulars similar to the one at bar. There the prosecutor, upon cross-examination of the accused, asked him "if on the day succeeding that on which it was alleged he committed the crime he did not go to the residence of one B., and there, finding Miss B., daughter of B., alone, did not attempt to drag her to the lounge," etc., and then said to the court in the presence of the jury, "We intend to follow this matter up, and show that he went right over to B.'s, and there tried to kiss and hug Miss B., and drag her to the lounge." The supreme court of Nebraska,

in commenting upon this conduct of the prosecutor, say: "It is the duty of the officer prosecuting to conduct the trial of a criminal case according to the established rules. He acts in a semi-judicial capacity, and is supposed to act alone from principle, and without bias or prejudice. The state has guaranteed to everyone a fair trial, and such trial cannot be had if the prosecution can resort to tricks to secure a conviction. If such practice was sanctioned, it would result in many cases in the conviction of innocent persons. The plaintiff in error was on trial for the crime charged in the information. So far as appears, he had not been charged with any other offense, and certainly was not on trial for the second. The statements of the attorney were improper, and in the highest degree prejudicial, and for those causes the judgment is reversed, and the cause remanded for a new trial." In *Smith v. People*, 8 Colo. 457, 8 Pac. 920, the defendant was charged with the crime of receiving stolen property. The prosecutor, in the course of his argument, stated "that he had expected to prove, as stated in his opening, that the defendant had murdered Mollie Gorman." The supreme court of Colorado, in discussing this action of the prosecutor, said: "The action of the prosecuting official, as above set forth in the record, constitutes gross misconduct on his part, and a total disregard of the legal rights of the prisoner. It manifests a disposition to ignore the plainest principles of law in relation to the trial of criminal offenses, and exhibits contempt for the authority and dignity of the court of which he was then an officer. Such statements, coming from the acting district attorney at the time and in the manner made, must have been highly prejudicial to the cause of the defendant. They were not only made by an officer of the court, but they were made in the closing or last speech to the jury, when there was no opportunity for defendant's counsel to criticise or answer them. No such facts had been received in evidence, and they were not only wholly outside the evidence, but totally irrelevant to the subject matter of the trial. The officer could have had but one motive in view in the course pursued by him, viz., to prejudice the jury against the prisoner by charging her with the commission of graver crimes than the offense for which she

was being tried." In *Holder v. State,* 58 Ark. 473, 25 S. W. 279, the defendant was prosecuted on the charge of murder, and in the course of his cross-examination the prosecutor asked him, among other things, "Is it not a fact that you had committed rape in Texas, and left there for that reason?" Battle, J., speaking for the court, concerning this question, says: "The action of the attorney for the state was highly reprehensible. A prosecuting attorney is a public officer, 'acting in a *quasi* judicial capacity.' It is his duty to use all fair, honorable, reasonable, and lawful means to secure the conviction of the guilty who are or may be indicted in the courts of his judicial circuit. He should see that they have a fair and impartial trial, and avoid convictions contrary to law. Nothing should tempt him to appeal to prejudices, to pervert the testimony or make statements to the jury, which, whether true or not, have not been proved. The desire for success should never induce him to endeavor to obtain a verdict by arguments based on anything except the evidence in the case, and the conclusions legitimately deducible from the law applicable to the same. To convict and punish a person through the influence of prejudice and caprice is as pernicious in its consequences as the escape of a guilty man. The forms of law should never be prostituted to such a purpose." The Missouri court of appeals, in the case of *State v. Trott,* 36 Mo. App. 29—a gambling case—in discussing the conduct of the prosecutor in cross-examining the accused, and asking him if he had not played cards for money before, said: "The question thus put to the witness by the state's attorney was not only not pertinent to the witness' direct examination or to the issues, but it was inadmissible as evidence against him on any theory, and it thrusts into the minds of the jurors an irrelevant matter, which was highly prejudicial to the accused." In the case of *People v. Cahoon,* 88 Mich. 456, 50 N. W. 384, the court, in commenting upon the action of the prosecutor in making remarks in the presence of the jury as to the purpose of the evidence he was offering, said: "Zeal in a prosecuting attorney is entitled to the highest commendation, but that zeal must be exercised within proper limits. . . . . In criminal cases the prosecuting attorney is a

public officer, acting in a *quasi* judicial capacity. Juries very properly regard him as unprejudiced, impartial and non-partisan; and insinuations thrown out by him regarding the credibility of witnesses for the defense are calculated to prejudice the defendant." To the same effect, see *Gale v. People,* 26 Mich. 156; *People v. Devine,* 95 Cal. 231, 30 Pac. 378; *People v. Lee Chuck,* 78 Cal. 227, 20 Pac. 719; *People v. Ah Len,* 92 Cal. 282, 27 Am. St. Rep. 103, 28 Pac. 286.

It will be observed from the foregoing authorities that the courts do not look with favor upon the action of prosecutors in going beyond any possible state of facts which can be material as to the guilt or innocence of the defendant in a particular case for which he is on trial. Prosecutors too often forget that they are a part of the machinery of the court, and that they occupy an official position, which necessarily leads jurors to give more credence to their statements, action, and conduct in the course of the trial and in the presence of the jury than they will give to counsel for the accused. It seems that they frequently exert their skill and ingenuity to see how far they can trespass upon the verge of error, and generally in so doing they trespass upon the rights of the accused. It is the duty of the prosecutor to see that a defendant has a fair trial, and that nothing but competent evidence is submitted to the jury, and above all things he should guard against anything that would prejudice the minds of the jurors, and tend to hinder them from considering only the evidence introduced. When he has submitted all the facts in the case to the jury he should be content, but he should never seek by any artifice to warp the minds of the jurors by inferences and insinuations. In the case at bar it is apparent at once that the questions of the special prosecutor were calculated to prejudice the jury, and lead them to believe that the defendant who was then on trial was a bad and dangerous man in a community, and that he had been guilty of a similar offense prior to the one alleged, and that his conduct with other young girls had brought about the death of his own wife; and this was sought to be made more forcible by asking the defendant's son if he had not made such statement himself—facts which were wholly foreign to the case upon trial.

It could not be material in any view of the case. It was not proper cross-examination, and upon no view or theory of the case was it admissible. In this case the objection to one of the questions was sustained, but counsel continued to ask practically the same question. The defendant's attorney objected to the conduct of the counsel, and finally the court overruled the objection of defendant's counsel to a very similar question, as will be seen from the portion of the record quoted. From this ruling of the court the jury had a right to believe that the evidence was competent for them to consider.

Another thing which appears in this case, and makes the error more prejudicial to the rights of defendant, is the fact that the evidence was of the most conflicting and unsatisfactory character; so much so that we cannot doubt that the conduct of counsel and the incompetent evidence admitted did actually prejudice defendant.

It is urged by the attorney general that an exception to the action of the assistant prosecutor and the rulings of the court was not properly saved. We are unable to agree with this contention. The record above quoted shows that defendant's counsel twice objected to the questions, and once took exception to the action of counsel for the state in persisting in substantially repeating the question. Attorneys should be careful in making their objections and saving their exceptions, but we think they have sufficiently done so in this case.

After the defendant had rested his case, the state examined the witness Mary Phillips in rebuttal, and asked her if she had had such a conversation with the witness Daniel Irwin as had been set forth in the question asked of Irwin, and she answered in the affirmative. The defendant assigns the admission of this evidence as error. The record, however, does not show any objection made to the question, but it is well enough here to observe that the evidence was clearly inadmissible as against the defendant, and the fact that it was given under the guise of impeachment of the witness Daniel Irwin did not make it competent.

The judgment of the district court is reversed, and cause remanded.

Sullivan, C. J., and Stockslager, J., concur.