PEOPLE v. LIESKA.

1. CRIMINAL LAW—APPEAL AND ERROR—QUESTIONS REVIEWABLE.
   Claimed errors on the trial for assault with intent to murder, which relate to that charge, are not material on error after a conviction for assault with intent to do great bodily harm less than murder.

2. SAME—TRIAL—DUTY OF PROSECUTOR—IMPROPRIETIES—CONDUCT OF COUNSEL.
   Insinuations and questions by the prosecuting attorney, having a tendency to prejudice the jury as to respondent's witnesses and relating to irrelevant matters, warrant a reversal on the ground that respondent did not have a fair trial.

Error to recorder's court of Detroit; Connolly, J. Submitted April 22, 1910. (Docket No. 140.) Decided June 6, 1910.

Frank Lieska was convicted of an assault with intent to do great bodily harm less than the crime of murder, and was sentenced to imprisonment for not less than five and not more than ten years in the branch of the State prison at Marquette. Reversed.

*Edward S. Grece*, for appellant.

*Philip T. Van Zile*, Prosecuting Attorney, for the people.

STONE, J.   The respondent was charged in the court below with the crime of assault with intent to kill and murder one Frank Wilkinson, in the city of Detroit, on September 26, 1908.   He was convicted of an assault with intent to do great bodily harm less than the crime of murder, and was sentenced to the Marquette prison. Frank Wilkinson was a member of the metropolitan police, and an officer of the detective department.   For some time before the said 26th day of September there had been repeated burglaries, especially in the western portion of the city, where this alleged crime occurred. The said Frank Wilkinson testified that the respondent was well known to him and to the police of the city as a criminal.   Respondent had often been arrested, and, some two or three years before this occurrence, had returned to the city of Detroit, after serving a sentence in the State prison for robbery, which facts were well known to said Wilkinson.   On this particular day Wilkinson was going home for dinner, and was in a Fourteenth-street car.   He testified that when in the vicinity of Magnolia and Linden streets, in the western part of the city, about 11:45 a. m., he saw respondent, in between two houses on the west side of Fourteenth street, and that he appeared to be looking the houses over; that, knowing that the respondent did not live in that part of the city, and thinking his action suspicious, Wilkinson got off the car and went back to investigate.   Speaking of respondent, Wilkinson testified:

"He came along toward me and had his head turned as though he was trying to avoid me.   He suddenly turned around, and he says, 'Hello,' and extended his hand.   I shook hands with him, and I says, 'What are you doing around here?'   He said, 'I am looking for some one.' He mentioned the name.   I cannot remember the name just now.   As he spoke something clicked in his pocket somewhere, a sort of metallic sound, I could not say what it was.   I looked down at the left-hand pocket of his sack coat, and it was protruding, and I ran my hand in there expecting to get hold of a gun, and instead of that I got

hold of some keys, and a pair of nippers, and a wire, probably 15 inches long, and pulled them out of his pocket. I just had a glance at them, and he swung back on his right side—he was facing me. I reached for my cuffs then; I expected there was going to be trouble. I had the things which I had taken from him in my left hand, and I pulled out my cuffs on the right side where I always carried them. As I pulled my cuffs out I saw the flare of the barrel of the gun, and I was shot; the bullet went in right by the side of my moustache, went through my mouth and was cut out back of my ear. I was stunned for awhile. I couldn't say how long, a second or two at least. I recovered myself and staggered for awhile and fell down. There was a gentleman ran to my assistance. It was Mr. Hartwig. It was the respondent who shot me, I have not the least doubt of it."

Wilkinson further testified that he was going to arrest the defendant on suspicion of his committing some of the burglaries that had been committed in that part of the city recently. He testified that the fact that respondent had been found between the two houses created in the witness' mind a suspicion that he was about to commit a crime. Further than has been stated, it appears that up to the time Wilkinson was shot nothing had been done toward making an arrest there. He further testified that it was his intention to take the respondent to police headquarters. There were many exceptions to the introduction of evidence, the charge of the court and refusals to charge as requested, and error has been assigned by respondent upon these exceptions.

Many of the questions and much of the argument of defendant's counsel relate to alleged errors in the rulings and charge, as to the crime of assault with intent to murder, and the rules of law applicable to such charge. As the defendant was convicted of the lesser offense of assault with intent to do great bodily harm less than the crime of murder, these questions and rulings become unimportant.

The respondent claimed upon the trial that he was not the person who shot Wilkinson; that it was a case of mis-

taken identity. . Tending to support his own testimony, numerous witnesses in his behalf were examined, whose testimony tended to show an alibi. It was the claim of these witnesses that he was at his mother's to dinner on the day in question, and was seen in the vicinity of his mother's house at about the hour of 12 o'clock noon, and that it was impossible for him to have shot Wilkinson. It is the claim of the respondent that this was a bona fide defense, and that he and his witnesses were not fairly treated by the attorney representing the people upon this question of an alibi in the trial of the case, and that the court permitted a line of cross-examination of the respondent and his witnesses upon that branch of the case which was unfair and prejudicial, all of which was duly excepted to by respondent's counsel; that the prosecuting attorney in the course of such examination made numerous insinuations as to the truthfulness of the testimony of respondent's witnesses, and that the court permitted the same, over the objection of respondent's counsel.

Mary Dombrowski gave evidence tending to show that the respondent was seen by her in the vicinity of his mother's house a little before 12 o'clock, and when the whistles blew for noon. On cross-examination of this witness the following occurred, relating to her brother-in-law, who was not a witness in this case:

"*Q.* Do you know whether or not your brother-in-law, Peter Dombrowski, was a witness to Frank Lieska's alibi when he was tried for robbery in the circuit court?"

To which question defendant's counsel objected for the reason that it was incompetent, irrelevant, and immaterial. The court overruled the objection, and counsel for defendant excepted to such ruling.

"*A.* I am only seven years married, and I can't know. I don't know anything about that.

"*Q.* Do you know that he went into the circuit court before Judge Donovan when Frank Lieska was being tried for robbery and swore then to an alibi, as you are swearing now?"

To which question defendant's counsel objected as incompetent, irrelevant, and immaterial. The court overruled the objection, and counsel for defendant excepted to such ruling.

"*A.* I know nothing about my brother-in-law or Frank Lieska."

Elizabeth Lieska, the mother of respondent, a woman 68 years old, testified in the case that respondent was at her house on the day in question, at about half past 12 o'clock. On cross-examination she was asked the following questions by the public prosecutor:

"*Q.* Do you recollect the time when your son was sent to prison?
"*A.* Yes, sir.
"*Q.* You were a witness in that case for your son, weren't you?
"*A.* I think I was there, but I was not a witness.
"*Q.* Don't you recollect that you were a witness and that the defense was an alibi, and you swore to an alibi in that case, too?"

To which question counsel objected on the ground of its being incompetent and immaterial. The court overruled the objection, and defendant's counsel excepted to the ruling of the court.

"*A.* Yes, sir; I think then was the time. I had forgotten it, but I think I was a witness there, too.
"*Q.* You claimed then that your son could not have been on the scene of the crime when it was claimed that it took place?"

Objection by defendant's counsel. Objection overruled and excepted to.

"*A.* I don't know whether I did or not, I cannot know that.
"*Q.* And in the other trial over in the circuit court you swore that he was at your place at the time the crime was committed, didn't you?"

To which question defendant's counsel objected on the

ground that it was incompetent, irrelevant, and immaterial. Objection overruled and exception taken.

"*A.* I have forgotten altogether. I cannot remember that any more."

John Lieska, a brother of respondent, was sworn, and testified that he ate dinner with respondent at their mother's on the day in question. On cross-examination the witness testified, in answer to a question from the public prosecutor, as follows:

"I remember when Frank Lieska was being tried for robbery over in the circuit court some years ago. I was a witness in that case.
"*Q.* You claimed in that case, when you were sworn on the stand, that your brother was not at the place where the crime was alleged to have been committed at the time it was committed, didn't you?"

Objected to by defendant's counsel on the ground that it was incompetent, irrelevant, and immaterial. The court overruled the objection and exception was taken.

"*A.* I did not answer that at all.
"*Q.* You did not answer?
"*A.* No; I was not there.
"*Q.* But you testified your brother was at some other place at that hour.
"*A.* I did not.
"*Q.* At that trial of your brother's?
"*A.* No; I did not.
"*Q.* You were a witness in his behalf at that trial?
"*A.* I was.
"*Q.* You know that his defense in that case was that he was not at the place they claimed he was, don't you?"

Objected to. Objection overruled and exception taken.

"*Q.* Don't you know that was his defense in that robbery case? What was the defense in that case?
"*A.* I don't know.
"*Q.* You don't know what you swore to in that case?
"*A.* Yes, I do.
"*Q.* Didn't you swear you had seen Frank on that day it was claimed the crime had been committed, on that other trial?

"*A.* I did not say that in court.

"*Q.* You are sure of that?

"*A.* Yes, sir.

"*Q.* If the records show that, they are not true?

"*A.* The record cannot show it. If you want me to tell what I swore—

"*Q.* Just answer my question; we have got the record, you don't need to worry about that, the same alibi witnesses you got here.

"*Mr. Grece:* I object to that statement.

"*The Court:* Strike it out.

"*Mr. Grece:* I submit these statements are improper, and the prosecuting attorney ought to be reprimanded for making those statements.

"*The Court:* The duty of counsel is to ask questions and not to make remarks.

"*Mr. Grece:* I take exception to the remark made by the prosecuting attorney.

"*Q.* Rose Lieska is your wife?

"*A.* Yes, sir.

"*Q.* She was a witness when Frank Lieska was tried before and convicted in the circuit court?

"*A.* I guess she was.

"*Q.* Is there any doubt about it?

"*A.* We wasn't in there for him; we were there for Cicora, the man that lived in the same house with me.

"*Q.* You were a witness for your brother?

"*A.* That was some time ago.

"*Q.* They were all tried together?

"*A.* Yes, sir.

"*Q.* They were all convicted?

"*A.* I don't know. Two stayed to home and one went to prison.

"*Q.* You claimed your brother was not there; they were all convicted?"

Objected to as irrelevant and incompetent, and that the record is the best evidence. Objection overruled, and exception taken.

"*A.* Two of them stayed at home and one went to prison.

"*Q.* They were all three found guilty?

"*A.* I don't know. If there were three found guilty there would have been three sent up. * * *

"*Q.* Don't you know that the claim of your brother in

that case was an alibi; in other words, he was not there when the crime was committed ?"

. Objected to.    Objection overruled and exception.

"*A.* I don't know what an alibi means."

Upon cross-examination of the respondent the following occurred:

"*Q.* And every time you have been tried for any cause your defense has been an alibi ?
"*A.* I tried to prove my innocence, yes, sir, every time.
"*Q.* But in spite of the manufactured evidence and the eleven witnesses you brought to prove your alibi for the robbery you were convicted, that is true, is it not ?
"*A.* I was convicted—
"*Q.* You had eleven witnesses to swear to the alibi in that case ?"

Objected to.    Objection overruled and exception taken.

"*A.* I don't remember, there were three men tried together."

We are compelled to say that, from these excerpts from the testimony, it appears that the course pursued by the prosecuting attorney, and permitted by the court, was highly improper and prejudicial to the rights of the respondent.    The questions asked Mary Dombrowski as to the conduct of her brother-in-law, Peter, after she had answered that she knew nothing about it, indicate an attempt on the part of the prosecuting attorney to prejudice the witness before the jury.    Not only was this irrelevant and immaterial and foreign to the case, but it was highly improper.    It has been repeatedly held by this court that, especially where it appears that the respondent is unpopular in the community where his trial is had, the prosecuting attorney and trial judge are under especial responsibility to conduct his trial with fairness and impartiality; and that it is reversible error for the prosecuting attorney to make unwarranted attacks upon respondent's witnesses calculated to arouse in the jury an unjust suspicion of their character and truthfulness.    *Rickabus* v. *Gott,* 51

Mich. 227 (16 N. W. 384); *People* v. *Bielfus*, 59 Mich. 576 (26 N. W. 771); *Sullivan* v. *Deiter*, 86 Mich. 404 (49 N. W. 261); *People* v. *Cahoon*, 88 Mich. 456 (50 N. W. 384); *People* v. *Lange*, 90 Mich. 454 (51 N. W. 534); *People* v. *Gotshall*, 123 Mich. 474 (82 N. W. 274); *People* v. *Payne*, 131 Mich. 474 (91 N. W. 739); *People* v. *Rice*, 136 Mich. 619 (99 N. W. 860). Zeal in the prosecuting attorney is entitled to the highest commendation, but it must be exercised within proper limits. Witnesses are entitled to respectful consideration, and it is the duty of the courts to see that they are protected from the insinuations and attacks of counsel. Juries very properly regard the prosecuting attorney as unprejudiced, impartial, and nonpartisan, and insinuations thrown out by him regarding the credibility of witnesses for the defense are calculated to prejudice the respondent. As was said in *People* v. *Cahoon, supra,* these questions and insinuations reflected upon the character of the witnesses. The prosecuting attorney has no right to discredit the witness by innuendo. The questions as to whether the witnesses had been witnesses for the respondent upon the former trial, and whether, notwithstanding the fact that they swore to an alibi there (as in this case), the respondent was convicted, were manifestly improper.

We are constrained to say that the respondent did not have that fair and impartial trial which the Constitution and laws of this State guarantee him.

Conviction reversed, and a new trial ordered. Prisoner remanded to Wayne county, to be committed until bailed.

OSTRANDER, HOOKER, MOORE, and BLAIR, JJ., concurred.