O’NIELL, C. J.
 

 The defendant, appellant, was indicted for murder and convicted of manslaughter and sentenced to imprisonment in the penitentiary for a term not less than seven or more than twelve years.
 

 The record contains five bills of exception, the first, second and third of which relate to one and the same complaint. While the defendant was testifying in the case, and on cross-examination, the district attorney asked him:
 

 “Are you not the same nigger who drew this same big gun on Mr. Boots Warner?”
 

 The attorney for the defendant objected to the question on the ground that it was not
 
 *761
 
 relevant to any issue in the ease on trial, and -was not admissible even for the purpose of testing the credibility of the witness, and was asked merely fo.r the purpose of prejudicing the defendant in the estimation of the jury. The attorney therefore requested the judge to instruct the jury to disregard the question, so that neither the question itself nor the implication which it contained should influence the judgment of the jury in arriving at a verdict. The judge sustained the objection to the question but refused to give any instruction to the jury, and the defendant’s attorney reserved a bill of exceptions to the judge’s refusal to instruct the jury. Thereupon the district attorney asked the defendant:
 

 “Are you the same negro that a crowd had and was going to whip, and the sheriff took you away from them?”
 

 The attorney for the defendant repeated his objection and again requested the judge to instruct the jury to disregard the question and the suggestion or implication which it conveyed. The judge sustained the objection but again refused to give any instruction to the jury, and the attorney reserved his second bill of exceptions to the judge’s refusal to .instruct the jury. Thereupon the district attorney asked the defendant:
 

 “Are you not the same negro that had to leave that neighborhood on account of the white people being after you?”
 

 The attorney for the defendant repeated his objection and again requested the judge to instruct the jury so as to avoid the prejudicial effect of the question, but the judge merely sustained the objection to the question, and again refused to instruct the jury, and the attorney for the defendant reserved the third bill of exceptions to the judge’s refusal to instruct the jury.
 

 The judge says in his statements per curiam, attached to the three bills of exception, that, in his general charge to the jury, after the evidence was all heard and the arguments made, he instructed the jury that they should not consider anything said by counsel on either side, in argument or otherwise, not borne out or supported by the testimony and should base their verdict only and entirely on the sworn testimony of the witnesses who had appeared before them, and on the law as given in the judge’s charge to the jury. The judge admits that he refused to give any special instruction to the jury with regard to the improper questions propounded 'to the defendant by the district attorney, but says that he sustained the objection to the questions when they were propounded, and that the defendant therefore did not answer either of the objectionable questions.
 

 We agree with the district judge that the questions complained of were improper, but we do not agree that it was sufficient for the judge to sustain the defendant’s objection to the questions, without cautioning the jury, when requested to caution them, to pay no attention to the questions or to the accusations which were suggested and implied by the questions, or to the manifest attempt to invoke a prejudice against the defendant on account of his race or color. The judge, by his toleration of the repetitions of the objectionable manner of the cross-examination, condoned and virtually approved of the questions being propounded without serious intention of their being answered. The questions themselves were objectionable, not only because of their tendency to invoke the race prejudice, but because they had reference to three supposed previous troubles on the part of the defendant, which had no connection whatever with the crime for which he was on trial, and which were brought out by implication merely for the purpose of showing that the defendant was a man of bad character and of bad reputation for
 
 *763
 
 Ij'euce and quiet, when
 
 liis
 
 reputation or character in that respect was not at issue.
 

 In a very recent case, State v. Brice, 163 La. 392, 111 So. 798, where, as in this case, a colored man was tried by a jury of white men, for the murder of a colored man, and was convicted of manslaughter, the verdict and sentence were set aside and a new trial was granted because the district attorney, in his argument to the jury, made an unfair comparison between the trial of “a negro by negro evidence” and the trial of “a white man by white evidence.” The court said:
 

 “The judge should have sustained the objection, and if requested by the defendant’s attorney, should have instructed the jury immediately that the remarks of the district attorney were improper, not only as an appeal to race prejudice, but as an argument that the jurors should violate their oath and their duty to give the defendant a fair and impartial trial. In the per curiam the judge says that he considered the argument of the district attorney permissible because he was answering a statement made by the defendant's attorney in his argument to the jury, to the effect that, under the facts and circumstances of the case, the defendant would be promptly acquitted if he were a white man. That statement did not permit the district attorney to retort with- an appeal to race prejudice, or to ask for an unfair verdict. By overruling the objection to the argument, the judge tacitly sanctioned it. The judge’s sanction in such cases is apt to have great effect upon the verdict of the jury.” .
 

 And so, in this case, the judge, by overruling the defendant’s request for an immediate instruction
 
 to
 
 the jury to disregard the improper and repeated suggestions of the district attorney that the negro was in ill repute with his white neighbors, virtually sanctioned the repeating of the prejudicial questions.
 

 In Wilson v. United States, 149 U. S. 60, 13 S. Ct. 765, 37 L. Ed. 650, the court, in setting aside a verdict because of the neglect of the judge to give prompt instructions to the jury, when he sustained an objection to the district attorney’s referring to the failure of the defendant to take the witness stand, said:
 

 “By this action of the court in refusing to condemn the language of the district attorney, and to express to the jury in emphatic terms that they should not attach to the failure any importance whatever as a presumption against the defendant, the impression was left on the minds of the jury that if he were an innocent man he would have gone on the stand as the district attorney stated he himself would have done.
 

 “This language of the district attorney, and this action, or rather want of 'action, of the court, are set forth in the bill of exceptions, and although exceptions are generally taken to some ruling, or want of ruling, by the court in the progress of the trial in the admission or rejection of evidence or the interpretation of instruments, yet they can be taken to its action or want of proper action upon any proceeding in the progress of the trial from its commencement to its conclusion, and when properly presented can be considered by the court on writ of error.”
 

 In Hall v. United States, 150 U. S. 76, 14 S. Ct. 22, 37 L. Ed. 1003, the defendant, a white man, was convicted of the murder of a white man, at the Choctaw Nation in the Indian country, in Arkansas, and sued out a writ of error. In the trial in the United States District Court, the defendant introduced evidence of
 
 his good character
 
 and general reputation for peace and quiet, and, on cross-examination of the character witnesses, the district attorney brought out the fact that the defendant had killed a negro in Mississippi, four months before, and had been tried for murder and acquitted of the crime. We quote now from the statement of the case and the opinion by Mr. Justice Gray, for the court, viz.:
 

 “The district attorney, in his closing argument to the jury, made use of the following language: ‘We know what kind of trials they have in the state' of Mississippi of a white man for killing a negro. We know from reading the newspapers and magazines that such trials there are farces. We are not living in Egyptian darkness, but in the light of the nineteenth century. The defendant came from Mississippi with his hands stained with the blood of a ne
 
 *765
 
 gro, and went to the Indian country, and in less than four months had slain another man.’ And other like expressions and declarations that the killing of a negro in Mississippi, fpr which the defendant had been tried and acquitted there, was murder. To all of which declarations, expressions and arguments of the district attorney the defendant at the time objected; but his objections were by the court overruled,' and the defendant at the time excepted. * * *
 

 “The attempt of the prosecuting officer of the United States to induce the jury to assume, without any evidence thereof, the defendant’s guilt of a crime of which he had been judicially acquitted, as a ground for convicting him of a distinct and independent crime for which he was being tried, was a breach of professional and official duty, which, upon the defendant’s protest, should have been rebuked by the court, and the jury directed to allow it no weight.
 

 “The presiding judge, by declining to interpose, notwithstanding the defendant’s protest against this course of argument, gave the jury to understand that they might properly and lawfully be influenced by it; and thereby committed a grave error, manifestly tending to prejudice the defendant with the jury, and which, therefore, was a proper subject of exception, and, having been duly excepted to, entitles him to a new trial. Wilson v. United States, 149 U. S. 60, 67, 68 [13 S. Ct. 765] 37 L. Ed. 650, 652.”
 

 The fact that the defendant was not compelled to answer the improper questions of the district attorney is of no importance, for the questions themselves, and the form and language in which they were couched, were what the district attorney deemed important. He knew, when the objection to his first unfair question was sustained, that his second question would be equally objectionable, and his third question even more so. It is a grave injustice for a district attorney to propound improper questions, containing prejudicial suggestions or insinuations, without serious intention of having the questions answered, but for the purpose of having the questions themselves to make their unfavorable impression and have their prejudicial effect upon the mind of the jury. State v. Guagliardo, 146 La. 949, 84 So. 216; People v. Gotshall, 123 Mich. 474, 82 N. W. 274; State v. Irwin, 9 Idaho,. 35, 71 P. 608, 60 L. R. A. 716; People v. Cahoon, 88 Mich. 456, 50 N. W. 384.
 

 “In attempting to lay the foundation for the impeachment of a defendant on trial for murder,, who has taken the stand as a witness in his, own behalf, the prosecuting officer, in attributing to him statements which if shown and believed to have been made by him would be highly prejudicial to his defense, should act in good faith and with reasonable grounds for believing that he will be able to produce the evidence called for, by the questions propounded-by him and the announcements of his intention to impeach; and where, in several instances in the same cross-examinations, he not only fails to produce such evidence but offers'none whatever, the presumption is a fair one that he had none to offer, and the ‘conviction will be set aside.” State v. Guagliardo, 146 La. 949, 84 So. 216.
 

 “It is quite evident that the questions and not the answers were what the prosecution thought important. The purpose of the questions was to keep persistently before the jury damaging facts which could not be proved.” People v. Gotshall, 123 Mich. 474, 82 N. W. 274.
 

 “When it is manifest that the design or effect of questions is not to elicit facts but to cast suspicion upon the character and credibility of witnesses, courts must intervene or trials will result in the miscarriage of justice.” State v. Irwin, 9 Idaho, 35, 71 P. 608, 60 L. R. A. 716.
 

 “The prosecuting attorney is assumed to be a man of standing before the jury, and they may have thought he would not have asked the questions if he could not have proved what he intimated.” People v. Cahoon, 88 Mich. 456, 50 N. W. 384.
 

 Our conclusion is that the conduct of the district attorney in persisting in asking the defendant the prejudicial questions which he knew were improper and would not be anr swered, and the refusal of the district judge, when requested, to give timely instruction to the jury to disregard the questions and the accusations which were suggested and implied by the questions, deprived the defendant of a fair and impartial trial, and that he is therefore entitled to a new trial.
 

 The fourth bill of exceptions has reference to a statement made by the dis
 
 *767
 
 trict attorney in his argument to the jury. The defendant had a sear on the side of his head, which he said was caused by a stone or other missile thrown by the deceased. The district attorney argued to the jury that the scar might have been caused by the defendant’s striking his head against a fence post or coming in contact with a barb wire fence. There is nothing in the bill of exceptions to show that the argument was not a matter of deduction from the evidence in the case. A prosecuting attorney, in his argument to the jury, has the right to draw such conclusions and make such deductions from the evidence in the case as he deems reasonable or plausible. The argument in this case was not objectionable in that respect.
 

 The fifth bill of exceptions was reserved to the overruling of a motion for a new trial. There were two complaints in the motion. The first complaint was that, in the impaneling of the jury, the names drawn from the tales jury box were drawn by the sheriff, whereas, according to the eleventh section of the Act 135 of 1898, as amended by the Act 113 of 1918, the names should have been drawn by the clerk of court or one of his deputies. It is stated in the per curiam attached to the bill of exceptions that, under the judge’s orders and observations, the tales jury box was brought into court and the seal was broken and-the box opened by the clerk of court; that the judge did not remember whether the names were drawn from the box by the clerk of court or by one of his deputies; but that no objection was made to the manner of drawing the names .at the time they were drawn. The sixteenth section of the Act 135 of 1898 declares that all objections to the manner of selecting or drawing the jury must be urged before entering on the trial of the case; otherwise, all such objections shall be considered as waived. By the same token we must maintain that objections to the manner of drawing jurors from the tales jury box are considered waived unless urged before
 
 proceeding with
 
 the trial.
 

 The other complaint made in the motion for a new trial was that the defendant had remained in the courtroom while, at his attorney’s request, the judge and jury and the attorneys on both sides, and a witness then being examined for the defense, went outside of the courthouse and near the courthouse door examined certain bullet holes in an automobile, about which the witness had testified. It is argued that the defendant was denied the guaranty in section 9 of article 1 of the Constitution, that:
 

 “The accused in every instance, shall have the right to be confronted with the witnesses against him.”
 

 The defendant was not deprived of that right in this instance. If he had seen fit to go with the judge and jury and examine the bullet holes in the automobile, the privilege would not have-been denied him; but it was also his privilege to remain in the courtroom, as he did, during that brief interval. The constitutional right of an accused person to be confronted with the witnesses against him is not so sacramental that it may not be waived even as to matters of little or no importance.
 

 Eor the reasons set forth in the discussion of the first, second and third bills of exception—
 

 The verdict and sentence are annulled, and the case is ordered remanded to the district court for a new trial.