# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 38956

STATE OF IDAHO,                                )
                                               ) **Boise, February 2014 Term**
    **Plaintiff-Respondent,**              )
                                               ) **2014 Opinion No. 42**
v.                                             )
                                               ) **Filed: April 4, 2014**
RUSSELL JAMES PARKER,                          )
                                               ) **Stephen W. Kenyon, Clerk**
    **Defendant-Appellant.**               )
_____

    Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Hon. Michael E. Wetherell, District Judge.

    Appellant's conviction is <u>affirmed</u>.

    Sara B. Thomas, State Appellate Public Defender, Boise, attorney for appellant. Erik R. Lehtinen argued.

    Hon. Lawrence G. Wasden, Idaho Attorney General, Boise, attorney for respondent. John C. McKinney argued.

_____

W. JONES, Justice

## I. NATURE OF THE CASE

    The State charged Russell J. Parker with one count of lewd and lascivious conduct with a minor under sixteen. Parker went to trial and the jury found Parker guilty as charged. Parker appeals his conviction to this Court. He argues that the district court erred in admitting statements made by law enforcement during an interview with him. He also argues that the State engaged in five instances of prosecutorial misconduct, each satisfying the fundamental error standard. He further argues that the errors in the aggregate resulted in cumulative error. Due to these errors, Parker requests that this Court vacate his conviction and remand his case for a new trial. The State argues that Parker fails to establish any error in the admission of law enforcement's statements and fails to show that the alleged errors caused fundamental or cumulative error. This Court affirms Parker's conviction.

1

## II. FACTUAL AND PROCEDURAL BACKGROUND

In July of 2010, Boise City Police Department Detective Bill Smith was assigned to investigate allegations by Vanessa Marsh (Vanessa) that Parker sexually assaulted her three-year-old son T.S. Vanessa believed that the sexual assault occurred while Parker was babysitting T.S. in May and June of 2010. On August 11, 2010, Detective Smith conducted a "confront call" with Parker. Vanessa confronted Parker with her allegations while Smith listened to the conversation unbeknownst to Parker. Parker denied any wrongdoing.

On August 24, 2010, Detective Smith interviewed Parker at City Hall West in Boise, Idaho. He "denied that any sexual contact of any type had occurred." In early September of 2010, Parker was interviewed a second time by Detective Smith and Detective Moe Heatherley, another officer with the Boise City Police Department. This interview was videotaped and it lasted approximately three hours. During this interview, Parker admitted to touching T.S.'s penis with his mouth accidentally when trying to give T.S. a "raspberry." He also admitted to putting T.S.'s penis in his mouth for about ten seconds shortly after the "raspberry" to demonstrate to T.S. the sexual conduct that he should not let people do to him.

On September 14, 2010, the State charged Parker with the crime of lewd conduct with a minor under sixteen under I.C. § 18-1508. Specifically, the State alleged that Parker, on or between May and June 2010, in Ada County, willfully and lewdly committed a lewd and lascivious act upon the body of a three year old minor by having oral to genital contact with the intent to appeal to and/or gratify the sexual desire of Parker. On October 19, 2010, the grand jury indicted Parker for the same offense.

Parker went to trial. Detectives Smith and Heatherley testified for the State, along with Vanessa, Vanessa's brother Austin Marsh (Austin), and Vanessa's friend Joy Heinbach (Joy). T.S. did not testify. Over Parker's objection, the second videotaped interview was admitted into evidence. Parker testified in his defense. He denied any sexual contact with T.S. He stated that he was not thinking clearly at the time of the second interview because he was on medication. He also explained that he "felt bullied a bit" and that he "felt that . . . the only way [he] could get out of there" was to make the admission that he had sexual contact with T.S. The jury convicted Parker as charged and the district court entered a judgment of conviction. The district court sentenced Parker to a unified sentence of 30 years imprisonment with 10 years fixed. Parker appeals his conviction to this Court.

## III. ISSUES ON APPEAL

1.     Whether the district court erred by failing to conduct a Rule 403 analysis prior to admitting into evidence an unedited videotape of law enforcement's second interview with Parker.

2.     Whether five alleged instances of prosecutorial misconduct separately resulted in fundamental error.

3.     Whether the alleged errors in the aggregate resulted in cumulative error.

## IV. STANDARD OF REVIEW

The Court exercises free review of questions of law. *State v. Hawkins*, 155 Idaho 69, 71, 305 P.3d 513, 515 (2013). "On appeal, where a defendant stands convicted, the evidence is viewed in the light most favorable to the prosecution." *State v. Sheahan*, 139 Idaho 267, 286, 77 P.3d 956, 975 (2003) (quoting *State v. Allen*, 129 Idaho 556, 558, 929 P.2d 118, 120 (1996)).

## V. ANALYSIS

**A.     The District Court Erred By Failing To Conduct A Rule 403 Analysis Prior To Admitting Into Evidence An Unedited Videotape Of Law Enforcement's Second Interview With Parker, But The Error Was Harmless.**

The State introduced in its case-in-chief a video recording of Detectives Smith and Heatherley's second interview with Parker in September of 2010. This videotaped interview included incriminating statements made by Parker that he put his mouth on T.S.'s penis while trying to give T.S. a "raspberry" and that he put T.S.'s penis in his mouth for about ten seconds shortly after the "raspberry." The videotaped interview also included the detectives' interview questions and other statements made to Parker. Some of the detectives' statements repeated allegations that they claimed T.S. had made to law enforcement. For example, the detectives stated during their interview with Parker: (a) T.S. said "Russ would suck my penis;" (b) "did you ever then put your finger in -- he's the -- the reason I'm saying that -- I mean, that would explain it because he did say you put it -- your finger -- in his butt;" (c) T.S. said "over and over and over again that you had sucked his penis on numerous occasions;" (d) T.S. said "he's done it to me over and over and over;" (e) T.S. "keeps saying that it happened over -- you know, more than one time;" (f) "we're gonna end up with his -- a three-year old who has no reason to lie or make things up -- in fact what he's told us has been corroborated by you . . . but he's told us more and then you're telling us that nothing else happened;" (g) "the thing [T.S.] keeps saying over and over is 'Russ put his mouth on my butt and my pee pee;'" and (h) "I just really need to know where this mouth on the butt thing is coming from." These statements concerning T.S.'s

3

allegations of sexual contact by Parker are hereinafter referred to as the detectives' victim statements.

At trial Parker objected to the State's introduction of an unedited version of the second videotaped interview into evidence. He argued that the detectives' victim statements should be excluded from the video because the statements were hearsay. He also argued that the detectives' victim statements were prejudicial under Idaho Rule of Evidence (I.R.E.) 403 and should be excluded on that basis as well. He further argued that any jury instruction would not cure the prejudicial effect. The State argued that the statements were not hearsay because they were not offered for the truth of the matter asserted. The State explained that the detectives' victim statements were offered "to give context to the responses" given by Parker.

The district court admitted the videotaped interview into evidence without redacting the detectives' victim statements. The district court explained:

> Sometimes you are just in a circumstance where you have to place a context on the interview and the responses, and advise the jury that this is purely for context. I mean, the courts have recognized that, and that's why we have the availability of the limiting instruction. *And the response with regard to balancing of 403, under 403, is not an issue here, in this Court's opinion, because I specifically told the jury: "This is not evidence." . . . As a result, there is -- the balancing test, in this Court's opinion, does not apply because I'm telling them it's not evidence. . . .* I don't know how much clearer you can make that to the jury and balance the interests of both the defendant and the State, because both parties are entitled to a fair trial. To do what I think you [the defense] are requesting to be done, that every portion where the officer says, "Well," so and so "said," be removed is just going to leave the defendant making a series of statements that are totally out of context from what the interview was.

Parker argues on appeal that the district court abused its discretion by failing to conduct Rule 403's balancing test prior to admitting an unedited version of the second interview. The State argues that the district court was not required to engage in a Rule 403 analysis because the content of the detectives' victim statements was not evidence, but rather was offered to provide context to Parker's responses. The State also submits that any error in the admission of the detectives' victim statements was harmless.

1.    This Court reviews the trial court's admission or exclusion of evidence for an abuse of discretion.

"A trial court has 'broad discretion' in determining whether to admit or exclude evidence, 'and its judgment in the fact finding role will only be disturbed on appeal when there has been a clear abuse of discretion.'" *State v. Joy*, 155 Idaho 1, 6, 304 P.3d 276, 281 (2013)

4

(quoting *State v. Watkins*, 148 Idaho 418, 421, 224 P.3d 485, 488 (2009)). "[T]he trial court's conclusion that the probative value of the evidence is not outweighed by its unfair prejudice is reviewed under an abuse of discretion standard." *State v. Tapia*, 127 Idaho 249, 254, 899 P.2d 959, 964 (1995). This Court determines "whether the district court abused its discretion by examining: (1) whether the court correctly perceived the issue as one of discretion; (2) whether the court acted within the outer boundaries of its discretion and consistently within the applicable legal standards; and (3) whether the court reached its decision by an exercise of reason." *State v. Shackelford*, 150 Idaho 355, 363, 247 P.3d 582, 590 (2010).

  2. <u>The district court abused its discretion by admitting the detectives' victim statements without conducting the analysis required by Rule 403.</u>

 "An item of evidence may be logically relevant in several aspects, leading to distinct inferences or bearing upon different issues. For one of these purposes it may be admissible but for another inadmissible." 1 KENNETH S. BROUN ET AL., MCCORMICK ON EVIDENCE § 59 (7th ed. 2013). For example, a statement offered to show the effect on the listener is not hearsay, and therefore is admissible. *Id.* § 249 ("A statement that D made a statement to X is not subject to attack as hearsay when its purpose is to establish the state of mind thereby induced in X . . . ."). But that same statement offered to prove the truth of the matter asserted is inadmissible hearsay. I.R.E. 801, 802. When evidence serves both inadmissible and admissible purposes, the "normal practice" is to provide a limiting instruction describing the "allowable purpose" of the evidence. BROUN, *supra*, § 59. In certain situations, however, where "the danger of the jury's misuse of the evidence for the inadmissible purpose is acute, and the value of the evidence for the legitimate purpose is slight or the point for which it is admissible can readily be proved by other evidence," the rules of evidence "recognize the judge's power to exclude the evidence altogether." *Id.* Specifically, pursuant to I.R.E. 403, "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." I.R.E. 403.

 This Court has held that the district court's exclusion of evidence without conducting Rule 403's analysis was an abuse of discretion. In *State v. Ruiz*, 150 Idaho 469, 248 P.3d 720 (2010), the defendant sought to introduce evidence that a witness testified against him to avoid a mandatory minimum sentence. *Id.* at 471, 248 P.3d at 722. The district court excluded the

evidence. *Id.* at 470–71, 248 P.3d at 721–22. On review, the Court recognized that the evidence was relevant to the witness's credibility. *Id.* The Court then explained:

> To exclude evidence under Rule 403, the trial court *must* address whether the probative value is substantially outweighed by one of the considerations listed in the Rule. [*State v. Meister*, 148 Idaho 236, 241, 220 P.3d 1055, 1060 (2009).] The district court here did not conduct that analysis. It merely said, "You can't talk about minimum mandatories." After [defendant's] counsel objected, the court added, "I think that the court has a delicate line to walk between what you are allowed to do in terms of credibility and the fact that the jury is not to be advised of the penalties that the defendant might face, if convicted." Because it excluded the evidence without conducting the analysis required by Rule 403, the district court erred. *Id.*

*Ruiz*, 150 Idaho at 471, 248 P.3d at 722. Due to the district court's error, and the State's failure to allege that the error was harmless, this Court vacated the defendant's judgment of conviction. *Id.*

*Ruiz* cited to *Meister* for the requirement that the district court must address Rule 403's balancing test before excluding evidence. In *Meister* the defendant sought to admit evidence that a third party committed the crime, known as alternate perpetrator evidence. 148 Idaho at 238, 220 P.3d at 1057. The district court had excluded the alternate perpetrator evidence based on the Court's decision in *State v. Larsen*, 91 Idaho 42, 415 P.2d 685 (1966). *Meister*, 148 Idaho at 238, 241, 220 P.3d at 1057, 1060. The district court's ruling did not address whether the alternate perpetrator evidence was relevant and admissible pursuant to I.R.E. 401, 402, and 403. *Id.* at 241, 220 P.3d at 1060. The Court reasoned that the adoption of the Idaho Rules of Evidence in 1985 implicitly overruled *Larsen*. *Id.* at 240–41, 220 P.3d at 1060–61. With the *Larsen* standard overruled, the Court concluded that the district court erred "by applying the wrong standard for admissibility of alternate perpetrator evidence, and therefore, abused its discretion." *Id.* at 241, 220 P.3d at 1060. The Court explained:

> By excluding all this evidence from being presented in any context throughout the course of trial the district court prevented [the defendant] from presenting potentially relevant facts that may have developed throughout the course of the trial. [The defendant] should be afforded the opportunity to present his complete and full defense, which includes the presentation of all relevant evidence in the context of trial pursuant to any limitations of the Idaho Rules of Evidence.

*Id.* Due to the district court's error, the Court granted the defendant a new trial. *Id.*

As in *Meister* and *Ruiz*, the district court here issued an evidentiary ruling without conducting the analysis required by Rule 403, and, as in *Meister* and *Ruiz*, the district court's failure to conduct the Rule 403 analysis was an abuse of discretion. Although the detectives'

victim statements were admitted for the limited purpose of context, they were still evidence in the case. The district court was required to address "whether the probative value is substantially outweighed by one of the considerations listed" in Rule 403. *Ruiz*, 150 Idaho at 471, 248 P.3d at 722. By failing to conduct the Rule 403 balancing test, the district court did not act consistently within the applicable legal standards.

   3.  The district court's abuse of discretion was harmless.

   "'In the case of an incorrect ruling regarding evidence, this Court will grant relief on appeal only if the error affects a substantial right of one of the parties.'" *Shackelford*, 150 Idaho at 363, 247 P.3d at 590 (quoting *Obendorf v. Terra Hug Spray Co.*, 145 Idaho 892, 897, 188 P.3d 834, 839 (2008)) (citing I.R.E. 103(a)). "Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded." Idaho Criminal Rule (I.C.R.) 52.

> Whether an error affected substantial rights in a particular case depends upon a host of factors, including the importance of the witness' testimony to the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and the overall strength of the prosecution's case.

*Shackelford*, 150 Idaho at 366, 247 P.3d at 593. If a substantial right is not affected, an abuse of discretion may be deemed harmless. *Id.* at 363, 247 P.3d at 590. To establish harmless error, the State must "prove 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" *State v. Perry*, 150 Idaho 209, 221, 245 P.3d 961, 973 (2010) (quoting *Chapman v. California*, 386 U.S. 18, 24 (1967)). The inquiry is whether, beyond a reasonable doubt, a rational jury would have convicted Parker even without the admission of the detectives' victim statements in the second videotaped interview. *State v. Johnson*, 148 Idaho 664, 669, 227 P.3d 918, 923 (2010) (citing *Chapman*, 386 U.S. at 24).

   The district court's error was harmless because a rational jury would have convicted Parker even without the detectives' victim statements in the videotaped interview. With some or all of the detectives' victim statements excluded, Parker's incriminating statements in the videotaped interview still would have been shown to the jury. The prosecution was free to show those portions of the videotaped interview as an admission by a party opponent, which was acknowledged by the defense. I.R.E. 801(d)(2). Parker has not alleged that his incriminating statements should have been excluded. "A defendant who contends that he was coerced into making a false or inaccurate statement can seek to have it excluded from evidence. If it is

7

admitted, he can present evidence to show the circumstances under which it was made and to explain why it should not be believed or relied upon." *State v. Suriner*, 154 Idaho 81, 88, 294 P.3d 1093, 1100 (2013). Parker was afforded the opportunity to present evidence showing why his incriminating statements should not be believed, and he did so through his trial testimony.

Additionally, the district court's jury instruction regarding the videotaped interview adequately guarded against any prejudicial effect of the detectives' victim statements. It provided:

> You are about to see a video taped [sic] interview of the defendant by the police. You will note that some parts of the tape have been removed or redacted. Do not concern yourself with or speculate about the redactions. They were made to either conserve trial time or because they contained inadmissible material.

> During this interview, the police officer states at several points what he says the alleged victim stated about the defendant's behavior. You are advised that these comments about what the alleged victim may have said to the police are hearsay and are not evidence in this case. They remained in the tape only for the limited purpose of placing in context the interview and the defendant's responses to the questions asked and the statements made.

> You are further advised that the police officers are allowed, during an interrogation, to make statements which may not be totally true or may even be totally false in an effort to gain responses from a suspect. Because the alleged statements by the alleged victim were not under oath, and were not subject to cross examination, they are not evidence. You cannot find the defendant either guilty or not guilty based upon statements made by the officer about What [sic] the alleged victim did or did not say to the officer.

> You are the sole determiners of the facts in this case. The factual determinations which you make, however, must be based upon evidence. What the police officer says the alleged victim said or did not say is not evidence upon which you can base your verdict. Only the statements made by the defendant in response to the questions asked him by the officer is evidence in this case.

This instruction was given to the jury prior to viewing the video and prior to deliberations. The instruction very clearly informs the jury of the purpose of the detectives' victim statements. It explains that the detectives' statements could be completely false and states multiple times that the detectives' victim statements were not evidence. Additionally, the detectives' victim statements in this case had an investigatory role. The detectives used T.S.'s allegations to get Parker to respond with his version of the events in question, which the instruction also acknowledges. The jury instruction in this case sufficiently limited any prejudicial effect. Based

8

on the above reasons, the district court's error was harmless because there is not a reasonable possibility that the error affected the outcome of the trial.

**B.** **None Of The Five Alleged Instances Of Prosecutorial Misconduct Satisfy The Fundamental Error Standard.**

Parker submits that the prosecutor engaged in five instances of misconduct during trial. He claims that the prosecutor: (1) conveyed T.S.'s "sleep talk" to the jury after the district court ruled it was inadmissible evidence; (2) suggested that T.S.'s out-of-court statements were evidence of the alleged sexual contact; (3) commented on Parker's invocation of his Fifth Amendment right to silence; (4) offered testimony by Detective Heatherley that Parker was guilty of the charge and untruthful; and (5) appealed to the passions and prejudices of the jury. Parker did not object to these acts of the prosecutor at trial. Thus, he submits that each instance of prosecutorial misconduct satisfies the fundamental error standard. We decline to reverse Parker's conviction due to these alleged errors.

        1.      <u>Unobjected-to prosecutorial misconduct is reviewed for fundamental error.</u>

The Court will review error not preserved on appeal through an objection at trial if the defendant demonstrates fundamental error. *State v. Carter*, 155 Idaho 170, 173, 307 P.3d 187, 190 (2013). "A conviction will be set aside for prosecutorial misconduct only when the conduct is sufficiently egregious as to result in fundamental error." *Sheahan*, 139 Idaho at 280, 77 P.3d at 969. To demonstrate fundamental error, the defendant must satisfy a three-prong inquiry:

> (1) the defendant must demonstrate that one or more of the defendants unwaived constitutional rights were violated; (2) the error must be clear or obvious, without the need for any additional information not contained in the appellate record, including information as to whether the failure to object was a tactical decision; and (3) the defendant must demonstrate that the error affected the defendant's substantial rights, meaning (in most instances) that it must have affected the outcome of the trial proceedings.

*Perry*, 150 Idaho at 226, 245 P.3d at 978. Under this three-prong inquiry, the appellate court shall review an alleged error only if the defendant demonstrates that "one of his unwaived constitutional rights was plainly violated." *Id.* "If the defendant meets this burden then an appellate court shall review the error under the harmless error test, with the defendant bearing the burden of proving there is a reasonable possibility that the error affected the outcome of the trial." *Id.* "If the defendant persuades the appellate court that the complained of error satisfies this three-prong inquiry, then the appellate court shall vacate and remand." *Id.* at 228, 245 P.3d at 980.

2.	The prosecutor engaged in misconduct by conveying T.S.'s sleep talk and other out-of-court statements to the jury, but the error does not satisfy the threshold analysis under the fundamental error standard.

Parker claims that the prosecutor introduced T.S.'s out-of-court statements, including sleep talk, to the jury during (1) opening statement, (2) Vanessa's testimony, (3) Detective Smith's testimony, (4) Austin's testimony, (5) Joy's testimony, and (6) closing arguments.

The issue of T.S.'s out-of-court statements were first discussed prior to the State's presentation of its case-in-chief. Outside the presence of the jury, the prosecutor informed the district court that he intended to introduce a statement by T.S. through Joy's testimony. The prosecutor explained that Joy was prepared to testify that she heard T.S. say, "No, Russ, don't touch me," while T.S. was sleeping. The prosecutor argued that this out-of-court statement was admissible for the truth of the matter asserted as an excited utterance.

The defense argued that statement was inadmissible hearsay under *State v. Zimmerman*, 121 Idaho 971, 976, 829 P.2d 861, 866 (1992), which held that "sleep talk" is irrelevant, not reliable, and therefore inadmissible as evidence. The district court took the issue under advisement. It appears that the district court intended to "read the full text of the *Zimmerman* case" and issue a ruling before Joy took the stand.

At this time Parker also generally objected to the introduction of T.S.'s out-of-court statements. Parker explained that he believed a "great deal, if not all, of those are going to be hearsay." The prosecutor responded that the State did not "intend to introduce" T.S.'s statements, but it did "intend to talk about the fact that witnesses that are on the stand did ask the victim pointed questions and did respond to the answers it [sic] got." The State reiterated, "But it doesn't intend to introduce the statements that the victim makes to prove the matter asserted." Parker admits that his counsel did not pursue this matter further or obtain any ruling from the district court.

According to Parker, the prosecutor first introduced T.S.'s out-of-court statements, including the sleep talk, during his opening statement. The prosecutor told the jury:

> Folks, when [T.S.] called out from his nightmare, at that point his mother, Vanessa, knew she needed to act. She called the police, and that began the charges that bring you here today. What was that nightmare? Well, as the police investigation unfolds, it becomes clear that the nightmare is that the defendant, Russell Parker, sexually molested [T.S.], a three-year-old boy. And he did that by placing the three-year-old's penis in his mouth. And he did it more than once.

10

The prosecutor then told the jury that they would hear from Austin that he saw T.S. "sexually acting out against" Austin's son on two separate occasions. The prosecutor explained that Austin asked T.S. about the first incident and that he told Vanessa, "Hey, you need to watch out for this. This is serious," after he heard T.S.'s answer. The prosecutor explained that Austin asked T.S. if he was "okay" after the second incident, and, "based on what he hear[d]," he went to Vanessa again and said, "You got to do something. You got do something." The prosecutor also told the jury that they would hear from Joy that she heard "the cry out" from T.S. during his nightmare. The prosecutor explained that, based on the nightmare, Joy contacted Vanessa and told her, "You got to do something."

After opening statements, Parker claims that the prosecutor introduced T.S.'s out-of-court statements during direct examination of Vanessa. She testified that T.S.'s nightmares, among other things, led her to believe that T.S.'s behavior was not normal age-related behavior and that she contacted the police after the nightmare. She also testified that she tried to confront Parker by telling him that T.S. "had accused him of doing something."

Parker also claims that the prosecutor introduced T.S.'s out-of-court statements during direct examination of Detective Smith. Detective Smith testified that he called Vanessa because it was "the best course of action" after reviewing the case file. He explained that during his initial phone call with Vanessa she confirmed that T.S. "had made some statements that concerned her, and that she was worried that he might have been sexually assaulted" by Parker. After the phone call, Detective Smith asked Vanessa to do the "confront call."

Parker also alleges that the prosecutor introduced T.S.'s out-of-court statements during direct examination of Austin. The prosecutor asked Austin about the first time he found T.S. engaged in inappropriate sexual behavior with his son. Austin had walked into his son's room and saw T.S. performing oral sex on him. The prosecutor asked Austin if he asked T.S. about his behavior, and Austin explained he called Vanessa after hearing T.S.'s response. Austin testified about a second incident occurring several weeks later where he came home and found that T.S. had "bitten [his son's] bottom." The prosecutor again asked Austin if he asked T.S. about his behavior, and Austin explained that he called Vanessa immediately after hearing T.S.'s response.

Parker alleges that the prosecutor conveyed T.S.'s sleep talk to the jury during his direct examination of Joy. Prior to Joy's testimony, and outside the presence of the jury, the district court ruled on the admissibility of T.S.'s sleep talk. Initially, the district court "thought that [it]

11

had already made that ruling." The prosecutor informed the district court that the matter was under advisement. Conceding that *Zimmerman* was "good law," the prosecutor submitted that T.S.'s sleep talk of "No, Russ, no touch. Don't touch my pee-pee" should be admitted to show the effect on the listener Joy. The district court ruled:

> Well, I'm going to find that the statements that were made while the defendant -- or while the alleged victim was asleep and dreaming are not admissible. They are not admissible as direct evidence, and they are not admissible because their prejudicial effect outweighs their probative value in terms of the evidence presented to the jury. Where our Supreme Court -- or our appellate courts have held clearly that things that are said while someone is sleeping or having a nightmare are not admissible evidence, *I think it would be inappropriate to allow that testimony to go to the jury for any purpose, and I'm going to rule that that is not admissible.* We have the testimony in this case of the child's change in behavior, of the sexual acting out. Those are sufficient factors, as I've already said, to establish corroboration of the defendant's statements, and I just don't want to introduce the utilization of evidence to the jury which, in my opinion, would place reversible error in this case. The parties simply -- it's not admissible evidence, and to allow it to go to the jury, I believe, is more highly prejudicial than probative. And that's what I'm going to rule.

Shortly after the district court's ruling, the prosecutor examined Joy. The prosecutor asked Joy about a nightmare T.S. had while she was babysitting him in the beginning of July of 2010. The prosecutor asked Joy what she observed during the nightmare, and she described his physical behavior. The prosecutor then asked Joy:

> Q. And did he say some things?
>
> A. He did say some things.
>
> Q. And did those concern you?
>
> A. Yes, those did concern me.
>
> Q. And based on what he was saying and what he was doing and how he was acting, what did you do?
>
> A. Well, when I couldn't take any more of what he was saying, I scooped him up, woke him up, consoled him, and made sure he was calm and comfortable, got him to watching some cartoons, and I called his mother at work.
>
> . . .
>
> Q. Now, you said when you couldn't take any more. Do you mean this was very upsetting to you?
>
> A. It was very upsetting.
>
> Q. Could you understand what he was saying clearly?

12

A. Yes, I could understand what he was saying clearly.

Joy also explained that after telling Vanessa about the nightmare, Vanessa came to Joy's house "right away" after work and they called the police.

Finally, Parker claims that the prosecutor referenced T.S.'s out-of-court statements during closing arguments. The prosecutor stated:

> Folks, you have heard now the nightmare, you have heard about the nightmare, and you know the nightmare that's been in [T.S.] and [T.S.'s] family life over the, basically almost a year now. No child should have to suffer this way. No kid should have to wake up from a nightmare because of what this man did to him.
>
> . . .
>
> We know that [T.S.] spoke to Austin, spoke to Vanessa, spoke to Joy, and he told them things that made them concerned enough that Vanessa separated [T.S.] from the defendant, Russell Parker, and also serious enough that she called the police.
>
> . . .
>
> We also know, as I have already said, that [T.S.] says things to his family, to Joy, that make them remove [T.S.] from the defendant's presence.
>
> . . .
>
> And again, [T.S.] made statements to Vanessa and Austin that make them move [T.S.] away from the defendant's care.

Based on the prosecutor's direct examination and opening statement and closing argument discussed above, Parker claims that the prosecutor engaged in misconduct by conveying T.S.'s sleep talk and other out-of-court statements to the jury. We agree.

"As public officers, prosecutors have a duty to ensure that defendants receive fair trials." *State v. Severson*, 147 Idaho 694, 715, 215 P.3d 414, 435 (2009). "They should not 'exert their skill and ingenuity to see how far they can trespass upon the verge of error, [because] generally in so doing they transgress upon the rights of the accused.'" *State v. Christiansen*, 144 Idaho 463, 469, 163 P.3d 1175, 1181 (2007) (alteration in original) (quoting *State v. Irwin*, 9 Idaho 35, 44, 71 P. 608, 611 (1903)). "[A] prosecutor must 'guard against anything that would prejudice the minds of the jurors, and tend to hinder them from considering only the evidence introduced.' A prosecutor must also ensure that the jury receives only competent evidence." *Severson*, 147 Idaho at 715, 215 P.3d at 435 (quoting *Irwin*, 9 Idaho at 44, 71 P. at 611). "Prosecutorial misconduct includes asking questions where the answer is inadmissible, but the jury can infer what the answer would have been simply from the questioned [sic] asked." *Christiansen*, 144 Idaho at 469, 163 P.3d at 1181. For example, a prosecutor engaged in misconduct by questioning

the witness in a way that sought to have the witness testify that in his opinion the defendant was lying, which violated the Idaho Rules of Evidence. *Id.* The prosecutor's questioning was misconduct despite the fact that the witness never answered the question—the defense's objection to the prosecutor's line of questioning was sustained before the witness actually gave his opinion. *Id.* Nevertheless, the Court found that the jury "obviously understood where the prosecuting attorney was going with his line of questioning." *Id.* Similarly, a prosecutor engaged in misconduct by eliciting "highly prejudicial and irrelevant" testimony before discussing the admissibility of that testimony with the judge outside the presence of the jury. *State v. Field*, 144 Idaho 559, 572, 165 P.3d 273, 286 (2007). The judge had previously expressed that the testimony might be excluded and the prosecutor had promised he would speak with the judge before eliciting that testimony. *Id.* at 572, 165 P.3d at 286. The prosecutor's failure to do so was misconduct. *Id.*

Examining T.S.'s sleep talk evidence first, this Court finds that the prosecutor engaged in misconduct because the prosecutor conveyed information to the jury that he was instructed to exclude for any purpose. Due to the prosecutor's line of questioning with Joy, and his repeated references to the nightmare, the jury "obviously understood" the inferences that the prosecutor was asking the jury to make concerning T.S.'s sleep talk. *Christiansen*, 144 Idaho at 469, 163 P.3d at 1181. The prosecutor specifically asked Joy if T.S. had said "some things" while sleeping. The prosecutor followed up by asking if those things concerned her and if they were very upsetting to her. Joy explained that she "couldn't take it any more of what he was saying." Although the prosecutor did not introduce the sleep talk itself, it is unlikely that the jury believed that T.S.'s sleep talk was describing anything other than some kind of sexual or physical abuse by Parker, especially considering that Joy and Vanessa testified that the nightmare finally prompted Vanessa to contact the police and identify Parker as the perpetrator. The district court ruled that Joy's testimony of T.S.'s sleep talk was inadmissible for any purpose, including the effect on the listener, and the prosecutor attempted to skirt around the district court's ruling by giving the jury more than enough information to easily infer the content of T.S.'s sleep talk. "This type of tactic is prosecutorial misconduct." *Id.*

Turning to T.S.'s non-sleep talk out-of-court statements, this Court also finds that the prosecutor engaged in misconduct. The prosecutor represented to the district court and the defense that the prosecutor would introduce those statements to show only the effect on the

listener. Yet the prosecutor went far beyond that representation. The context surrounding the prosecutor's numerous references to T.S.'s out-of-court statements, especially during opening statement and closing argument, show that the prosecutor used these statements to prove to the jury that Parker engaged in sexual contact with T.S. The prosecutor may not use the guise of "the effect on the listener" to convey inadmissible hearsay. Although the district court did not make a ruling on the admissibility of T.S.'s non-sleep talk out-of-court statements, the prosecutor was bound by his representation to the court. The prosecutor then cannot use his "skill and ingenuity" to see how close he can get to conveying to the jury the substance of T.S.'s out-of-court statements without blatantly disregarding his own representation. *Christiansen*, 144 Idaho at 469, 163 P.3d at 1181.

In limited circumstances inadmissible hearsay might be admissible to show the effect on the listener, but generally the evidence submitted is not relevant. The effect on the listener exception is often used as a ruse to put inadmissible evidence before the jury improperly. As we held in *Field*, 144 Idaho 559, 165 P.3d 273, the effect on the listener must be relevant and what prompted a call to the police is not relevant.

> Originally, the State argued the statements were not hearsay because they were not introduced to prove the truth of the matter asserted, only to show the effect on listener—that the statement to S.P led to making statements to H.P.'s mother which led to a police report. However, the State has never shown that the exact statements prompting the mother to call the police are relevant—of consequence to determining whether Field's guilt is more or less probable. *See* I.R.E. 402. Thus, they were not properly admitted on those grounds.

*Id.* at 567, 165 P.3d at 281 (footnote omitted). In the present case, there was no objection to T.S.'s non-sleep talk out-of-court statements on the basis of relevance.

This Court concludes that the prosecutor engaged in misconduct, but the prosecutorial misconduct does not satisfy the fundamental error threshold analysis. A defendant's right to a fair trial is impacted "[w]here a prosecutor attempts to secure a verdict on any factor other than the law as set forth in the jury instructions and the evidence admitted during trial, including reasonable inferences that may be drawn from that evidence." *Perry*, 150 Idaho at 227, 245 P.3d at 979. The prosecutorial misconduct here may have impacted Parker's right to a fair trial, but Parker has not met his burden under the second prong of *Perry*'s threshold analysis to show that the error was "clear or obvious, without the need for any additional information not contained in the appellate record, including information as to whether the failure to object was a tactical

15

decision." *Id.* at 226, 245 P.3d at 978. Based on the trial record, Parker's counsel's failure to object may have been a tactical decision. Just prior to Joy's discussion of T.S.'s nightmare, Parker's counsel raised three hearsay objections to Joy's testimony regarding her communication with Vanessa, two of which were sustained by the district court. Moreover, the district court had recently ruled on the admissibility of T.S.'s sleep talk. Thus, Parker's counsel likely was not ignorant of the law or unaware of the evidence the prosecutor attempted to introduce through Joy's testimony of T.S.'s nightmare. *See State v. Parton*, 154 Idaho 558, 568, 300 P.3d 1046, 1056 (2013) ("If . . . defense counsel did not realize the impropriety of the . . . prosecutor's actions, ignorance of the law is not a tactical decision.") Similarly, defense counsel failed to obtain a ruling from the district court regarding the admissibility of T.S.'s non-sleep talk out-of-court statements after the initial discussion with the district court regarding the admissibility of that evidence. Nor did defense counsel move for a mistrial or object during the prosecutor's opening statement or closing argument. Therefore, Parker has failed to show fundamental error because he did not demonstrate that "one of his unwaived constitutional rights was plainly violated." *Perry*, 150 Idaho at 227, 245 P.3d at 979.

3.     <u>Any prosecutorial misconduct in appealing to the passions and prejudices of the jury during opening statement and closing argument was harmless.</u>

Parker contends that the prosecutor used the nightmare theme not only to convey T.S.'s sleep talk to the jury, but also to appeal to their passions and prejudices. He explains that the prosecutor began his opening statement with comments about "T.S.'s literal and metaphorical nightmare." The prosecutor then returned to the nightmare theme at the beginning of his closing argument and during rebuttal. Parker argues that the prosecutor "sought to engender sympathy for young T.S. and/or anger at Mr. Parker" by referring to a metaphorical nightmare suffered by T.S. and by arguing generally that no child should suffer like T.S.

The prosecutor and defense "have traditionally been afforded considerable latitude in closing argument to the jury and are entitled to discuss fully, from their respective standpoints, the evidence and the inferences to be drawn therefrom." *Sheahan*, 139 Idaho at 280, 77 P.3d at 969. Despite this wide latitude, "appeals to emotion, passion or prejudice of the jury through use of inflammatory tactics are impermissible." *State v. Ellington*, 151 Idaho 53, 62, 253 P.3d 727, 736 (2011) (quoting *State v. Phillips*, 144 Idaho 82, 87, 156 P.3d 583, 588 (Ct. App. 2007)). The Court has recognized, however, that "[t]he line separating acceptable from improper advocacy is not easily drawn; there is often a gray zone." *State v. Carson*, 151 Idaho 713, 721, 264 P.3d 54,

62 (2011). "[P]rosecutorial misconduct during closing arguments will constitute fundamental error only if the comments were so egregious or inflammatory that any consequent prejudice could not have been remedied by a ruling from the trial court informing the jury that the comments should be disregarded." *Sheahan*, 139 Idaho at 280, 77 P.3d at 969 (alteration in original) (quoting *State v. Cortez*, 135 Idaho 561, 565, 21 P.3d 498, 502 (Ct. App. 2001)).

The prosecutor's references to T.S.'s nightmare and child suffering do not rise to the level of fundamental error. In *State v. Adamcik*, the defendant alleged that the prosecutor engaged in misconduct by appealing to the jury's sympathy for the victim and the victim's family. 152 Idaho 445, 480–81, 272 P.3d 417, 452–53 (2012). The Court discussed three reasons that the prosecutor's arguably improper statements did not amount to fundamental error:

> (1) the statements were not dwelled upon or made in support of an argument that the defendant receive a harsher sentence; (2) the statements merely reiterated evidence offered previously during the trial; and (3) the district court had instructed the jury on several occasions that the prosecutor's closing statements were not to be regarded as evidence.

*Adamcik*, 152 Idaho at 481, 272 P.3d at 453 (citing *Severson*, 147 Idaho at 720, 215 P.3d at 440). Due to those three reasons, the prosecutor's improper statements in *Adamcik* did not "impact the fairness of the trial or deprive the defendant of due process." *Id.* These same three reasons are present here. The prosecutor's nightmare or child suffering statements were not made or dwelled upon in support of a harsher punishment. "Nor was any new evidence presented to the jury." *Adamcik*, 152 Idaho at 481, 272 P.3d at 453. The jury was aware from Joy's and Vanessa's testimony that T.S. had a nightmare that prompted Vanessa to contact the police. Similarly, the jury was aware of T.S.'s suffering, which was provided by Austin, Vanessa, and Joy's discussion of T.S.'s behavioral changes and by Parker's admission of the sexual contact. Characterizing sexual abuse and its effects on the child as "suffering" is not so egregious or inflammatory in light of the nature of a charge of lewd and lascivious conduct with a minor. Finally, the district court told the jury that it should not consider the prosecutor's closing statements to constitute evidence and included that in the jury instructions. *Id.* Therefore, the prosecutor's comments did not violate Parker's right to a fair trial and due process. Further, there is not a reasonable possibility that the verdict would have been different had any error in the prosecutor's opening statement and closing argument not occurred.

4. <u>The prosecutor engaged in misconduct in commenting on Parker's invocation of his right to silence, but the error was harmless.</u>

17

The Fifth and Fourteenth Amendments of the U.S. Constitution, as well as Article I, section 13 of the Idaho Constitution, guarantee a criminal defendant the right not to be compelled to testify against himself. *Ellington*, 151 Idaho at 60, 253 P.3d at 734 (citing U.S. CONST. amends. V, XIV; IDAHO CONST. art. I, § 13). "The U.S. Supreme Court has interpreted this right also to bar the prosecution from commenting on a defendant's invocation of that right." *Id.* (citing *Griffin v. California*, 380 U.S. 609, 613–14 (1965)). A prosecutor may not use evidence of post-arrest, post-*Miranda* silence for either impeachment purposes or as substantive evidence of guilt "because of the promise present in a *Miranda* warning." *Id.* (citing *Wainwright v. Greenfield*, 474 U.S. 284, 292 (1986); *Doyle v. Ohio*, 426 U.S. 610, 619 (1976)). "If a prosecutor is allowed to introduce evidence of silence, for any purpose, then the right to remain silent guaranteed in *Miranda v. Arizona*, 384 U.S. 436 (1966), becomes so diluted as to be rendered worthless." *State v. White*, 97 Idaho 708, 714–15, 551 P.2d 1344, 1350–51 (1976). The prosecutor also "may not use any post-custody silence to infer guilt in its case-in-chief." *Ellington*, 151 Idaho at 60, 253 P.3d at 734. In cases of pre-*Miranda*, pre-arrest silence, the prosecutor may not use that evidence "solely for the purpose of implying guilt." *State v. Parton*, 154 Idaho 558, 566, 300 P.3d 1046, 1054 (2013) (quoting *State v. Moore*, 131 Idaho 814, 821, 965 P.2d 174, 181 (1998)). The prosecutor may use pre-*Miranda* silence, either pre- or post-arrest, for impeachment of the defendant. *Ellington*, 151 Idaho at 60, 253 P.3d at 734.

Parker contends that the State improperly commented on his invocation of his Fifth Amendment right to silence. The prosecutor elicited the following testimony from Detective Smith during direct examination regarding the second interview with Parker:

Q. How did the interview end?

A. As I was talking to him about these things, he said, "I'm done." And since I had promised him that he could leave whenever he wished to leave, I took that as a sign that he did not want to talk to us any more [sic]. So I talked to him for just a minute to make sure he was okay, and then I allowed him to leave.

The testimony elicited by the prosecutor regarding Parker's pre-arrest silence was improper. Although it is not clear from the record that Detective Heatherley informed Parker of his *Miranda* rights,[1] pre-arrest silence may not be used for the purpose of implying guilt. Here,

---

[1] The prosecutor elicited the following testimony from Detective Heatherley:

Q. And as part of the interview, did you apprise him of his rights?

A. Yes.

Detective Smith testified that he was talking to Parker about "these things," i.e. Parker's sexual contact with T.S., Parker said he was "done" and Detective Smith "took that as a sign" that Parker did not want to talk anymore. This line of questioning clearly was not used to impeach Parker. It appears to have been used solely for the purpose of informing the jury that Parker invoked his right to silence after Detective Smith talked to Parker about contact with T.S.'s penis and anus. The State provides absolutely no convincing reason why the jury needed to be informed of how the second interview terminated. *See Ellington*, 151 Idaho at 61, 253 P.3d at 735. Nor does the State offer any explanation for the relevancy of the interview's termination. Moreover, even if Detective Smith offered an unsolicited comment on Parker's invocation of his rights, Detective Smith's actions are imputed to the State. *See id.* Thus, this Court finds that the prosecutor engaged in misconduct because the prosecutor's line of questioning with Detective Smith caused an improper comment on Parker's silence for purposes of implying guilt.

However, Parker has not met his burden under the fundamental error standard to prove there is a reasonable possibility that the error affected the outcome of the trial. *Perry*, 150 Idaho at 228, 245 P.3d at 980. The jury may have inferred guilt from Parker's silence at the termination of this interview with the detectives, but the jury was introduced to ample evidence of guilt with Parker's own incriminating statements made during that same interview. This is not a case where the defendant did not answer any questions posited by law enforcement and the prosecutor sought to imply guilt from the defendant's complete silence or lack of cooperation. *See Ellington*, 151 Idaho at 59, 253 P.3d at 733. Any inference of a guilty conscience from Parker's silence did not contribute to the verdict obtained.

5.  <u>Any prosecutorial misconduct by eliciting testimony of Detective Heatherley's opinion of Parker's truthfulness or guilt does not satisfy the threshold analysis under the fundamental error standard.</u>

---

Q. What we commonly refer to as his *Miranda* rights?

A. No.

Q. Okay. But you did give him his rights?

A. Yes. I gave him his rights and told him that he was free to leave at any time, did not have to answer any questions or make any statements, and any time during that time he could get up and leave. He was free to go.

Q. So was it completely voluntarily?

A. Yes

19

Parker claims that the State engaged in misconduct by allowing Detective Heatherley to comment on Parker's truthfulness or guilt.[2] During the State's direct examination of Detective Heatherley, he discussed the physical and verbal cues that he observes during interviews. He testified that it was a cue to him that Parker did not deny the allegations of inappropriate contact with T.S. The prosecutor asked why that was a cue and Detective Heatherley explained:

> A. Well, because an honest or innocent person, if they are not -- have not done --
>
> DEFENSE COUNSEL: Objection, Your Honor. I believe he is trying to give a conclusion about guilt or innocence.
>
> THE COURT: At this point he hasn't. I will overrule the objection.
>
> Q. BY THE PROSECUTOR: What – without commenting on it, what were things that -- why did that work as cue to you? Why was that a cue to you, that he didn't deny when you confronted him?
>
> A. Because in my training and experience, someone that -- most people, when they are accused of something they didn't do, will deny it.

During redirect examination, the prosecutor asked Detective Heatherley about the themes he used during the second interview, such as minimizing the defendant's conduct or portraying the defendant as the victim. The prosecutor asked him, "And what is your goal with these themes?" Detective Heatherley answered:

> When an individual is there and has lied to me, from what I'm seeing, I take it that he is lying about the incident that the victim has alleged. What I'm wanting to do is have that person begin to talk to me about it, and I try to minimize it so that later on he will come out with the truth.

Parker has failed to show fundamental error here because he has not demonstrated that an unwaived constitutional right was plainly violated. *Perry*, 150 Idaho at 227, 245 P.3d at 979. "[I]n Idaho a trial error that does not violate one or more of the defendant's constitutionally protected rights is not subject to reversal under the fundamental error doctrine." *Id.* at 226, 245 P.3d at 978. In other words, the fundamental error doctrine is not triggered by a violation of a rule or statute. *Id.* A defendant's constitutional right to a fair trial is not categorically violated by an evidentiary error. This Court has repeatedly recognized that a lay or expert witness cannot

---

[2] Parker also alleges that Detective Heatherley's statements during cross-examination contributed to the misconduct. Defense counsel asked Detective Heatherley if Parker "was being cooperative with you the entire time" of the interview. Detective Heatherley responded, "Well, he was being cooperative, but he was lying to me about certain things." Detective Heatherley's response was invited error. Parker "cannot now be heard to denounce the testimony that he roused." *State v. Gleason*, 123 Idaho 62, 66, 844 P.2d 691, 695 (1992) (quoting *State v. Owsley*, 105 Idaho 836, 837–38, 673 P.2d 436, 437–38 (1983)). Invited errors are not reversible. *State v. Dunlap*, 155 Idaho 345, 379, 313 P.3d 1, 35 (2013).

give an opinion of another witness's credibility or encroach on the fact-finding functions of the jury, but that rule is based on the Idaho Rules of Evidence, not a constitutional provision.[3] Thus, even assuming that the prosecutor engaged in misconduct by eliciting inadmissible opinion testimony, Parker has failed to show a clear violation of a constitutional right. Parker has failed to satisfy the threshold analysis under the fundamental error standard.

## C.     The Alleged Errors In The Aggregate Do Not Result In Cumulative Error.

"Under the doctrine of cumulative error, a series of errors, harmless in and of themselves, may in the aggregate show the absence of a fair trial. However, a necessary predicate to the application of the doctrine is a finding of more than one error." *Perry*, 150 Idaho at 230, 245 P.3d at 982. "Thus, it is well-established that alleged errors at trial, that are not followed by a contemporaneous objection, will not be considered under the cumulative error doctrine unless said errors are found to pass the threshold analysis under our fundamental error doctrine." *Id.* The threshold analysis under the fundamental error doctrine requires that the defendant demonstrate that "one of his unwaived constitutional rights was plainly violated." *Id.* at 226, 245 P.3d at 978.

Parker has established one preserved error: the district court's failure to conduct the analysis required by Rule 403 prior to admitting the videotape of Parker's second interview with law enforcement. Of the unpreserved errors, only one has satisfied the threshold analysis under the fundamental error standard: the prosecutorial misconduct in commenting on Parker's invocation of his Fifth Amendment rights. "The presence of errors, however, does not by itself require the reversal of a conviction, since under due process a defendant is entitled to a fair trial, not an error-free trial." *Moore*, 131 Idaho at 823, 965 P.2d at 183 (citing *Bruton v. United States*,

---

[3] For example, this Court stated in *Perry* that "lay witnesses are not permitted to testify as to matters of credibility" and that "expert testimony which does nothing but vouch for the credibility of another witness encroaches upon the jury's vital and exclusive function to make credibility determinations, and therefore does not 'assist the trier of fact' as required by [I.R.E.] 702." 150 Idaho at 229, 245 P.3d at 981. In the recent case *Ellington* this Court determined that the expert's testimony was inadmissible under I.R.E. 702, not a constitutional provision. 151 Idaho 53, 66, 253 P.3d 727, 740 (2011). In *State v. Jackson*, the Court of Appeals explained:

> Since adoption of the Idaho Rules of Evidence, Rules 608(a), 701, and 702 have all been cited as disallowing testimony of one witness that another witness was or was not telling the truth in particular testimony. *See, e.g.*, *State v. Christiansen*, 144 Idaho 463, 468, 163 P.3d 1175, 1180 (2007) (Rule 608(a)); *State v. Perry*, 139 Idaho 520, 525, 81 P.3d 1230, 1235 (2003) (Rule 702); *State v. Raudebaugh*, 124 Idaho 758, 768, 864 P.2d 596, 606 (1993) (Rule 608(a)); *State v. Hauser*, 143 Idaho 603, 612, 150 P.3d 296, 305 (Ct. App.2006) (Rule 701); *State v. Johnson*, 119 Idaho 852, 857–58, 810 P.2d 1138, 1143–44 (Ct. App.1991) (Rule 701). We have found no Idaho authority that invoked a constitutional provision as a basis for excluding vouching testimony.

151 Idaho 376, 381, 256 P.3d 784, 789 (Ct. App. 2011).

391 U.S. 123, 135 (1968)). The errors here in the aggregate do not show the absence of a fair trial. The State presented no physical evidence of the charge against Parker, but the State had a confession by Parker corroborated by circumstantial evidence from Vanessa's, Austin's, and Joy's testimony of T.S.'s behavioral changes and inappropriate sexual behavior with Austin's son. Further, Parker directly challenged the State's strongest evidence that connected him to the crime—his incriminating statements made at the second interview—by testifying in his defense. He gave an explanation for making those allegedly false statements and denied any sexual contact with T.S. The jury also was informed of Parker's initial denials of the alleged conduct during the confront call and first police interview. Viewing these errors in relation to the totality of the evidence presented at trial, the errors were not of "such magnitude" that Parker was denied a fair trial. *Id.*

## VI. CONCLUSION

Parker's conviction is affirmed.

Chief Justice BURDICK, Justices EISMANN, J. JONES and HORTON CONCUR.