**FILED**
**JUNE 15, 2017**
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 34078-3-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| ZACHARY R. ROY, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, J. — Zachary Roy, a minor, appeals his adjudications for

residential burglary and second degree theft. He argues he received ineffective assistance

of counsel because his trial counsel failed to object to hearsay. He also argues the trial

court erred when it determined it could not enter a suspended disposition. We determine

that the alleged hearsay was admissible for a nonhearsay purpose, so defense counsel's

failure to object was not deficient performance. The State correctly concedes that the trial

court erred when it concluded it lacked authority to suspend the disposition. We therefore

affirm the adjudications, but remand for a disposition hearing so the trial court may

suspend the remainder of Zachary Roy's sentence if it so desires.

## FACTS

Beginning in 2014, Zachary Roy resided with his grandmother, Teresa Roy, and Teresa's mother.[1] Zachary received $5 per week as allowance, and sometimes additional money for extra chores. Teresa estimated she gave her grandson about $240 since he moved in with her, although he usually spent his allowance on small items such as pop. He had no other source of income.

On October 9, 2015, while Zachary was at school, Teresa smelled marijuana coming from Zachary's bedroom. She entered his bedroom and found a marijuana container and Zachary's wallet on his bed. Teresa looked inside her grandson's wallet and found $882.

Teresa maintained a home office for her towing business. She had instructed Zachary not to enter the office without her permission or outside of her presence. After noticing the money in Zachary's wallet, Teresa decided to check her office file cabinet, which was where she stored her money from her business. She discovered multiple hundred dollar bills missing. She also found the office window unlocked and noticed that items in her office had been moved.

---

[1] We will refer to Zachary and Teresa by their first names, because "Mr. Roy" and "Ms. Roy" obfuscates their relationship.

Teresa called Asotin County juvenile probation officers and local law enforcement. Deputy Destry Jackson responded to the call. Teresa showed Deputy Jackson the wallet and the marijuana container. She also showed him the file cabinet in her office where she stored her money from her business. She told Deputy Jackson that her grandson had previously taken money from her and she believed he had done so again. She also told him she went over her invoices and bank deposit slips, and the tally showed a significant cash deficit since her last trip to the bank two days prior.

After Zachary came home from school he played with his friends in the basement. When they left, Zachary went into his room and then left his room upset. Teresa told Zachary she knew he had taken her money. Zachary denied the accusation.

PROCEDURE

The State charged Zachary Roy with second degree theft and residential burglary. As with all juvenile adjudications, the parties tried their case to the bench.

The State called two witnesses: Teresa Roy and Deputy Destry Jackson, the responding officer. In addition to the facts set forth above, Teresa testified:

> Q And, did you notice anything else about the condition of your room?
> A Yeah. I checked—I went around and tried to figure out—*because my mother had said he'd been going around the outside of the house, to figure out how he would have got in.* And, that's when I found that the

3

window looked locked but it wasn't. So,—I have since put a stick in that window, too.

Report of Proceedings (RP) (Feb. 5, 2016) at 24 (emphasis added). Defense counsel did not object to the italicized portion of Teresa's answer.

Zachary testified in his own defense. According to Zachary, he questioned his grandmother about taking the money from his wallet, but she did not address his question directly. He did not report the missing money to law enforcement due to his prior experience with the justice system and his concern that law enforcement would not believe him. He explained that the large amount of cash in his wallet was from selling his gaming system for about $150 and saving his allowance. He testified he converted the small bills he received as allowance into larger bills. Zachary denied that he sold marijuana as the source for the cash.

The parties gave their closing arguments. The State argued the evidence of the large amount of money in Zachary's wallet and the large amount of money missing from Teresa's file cabinet was strong circumstantial evidence of Zachary's guilt. The State also argued that Zachary's explanation that he saved the money and sold his gaming system did not add up to the amount of money found in his wallet. The State did *not* argue that Teresa's mother saw Zachary going around outside the house the day of the theft or any other day.

4

The trial court found Zachary guilty as charged. In its oral ruling, the trial court noted that its verdict was based on circumstantial evidence, and that no one piece of evidence was sufficient. The trial court further noted, "when I tie all these things together to make a nice little rope of evidence, so to speak, I do find that it all adds to concluding that there . . . is no reasonable doubt that [Zachary] committed theft in the second degree and residential burglary." RP (Feb. 5, 2016) at 68. In its ruling, the trial court emphasized four pieces of circumstantial evidence. First, the amount of money Zachary could have saved from his allowance, $240, in addition to the amount he testified he received from selling his gaming system, $150, was far short of $882. Second, Teresa's mother saw Zachary outside of the window the day the money went missing.[2] Third, the number of $100 bills found in Zachary's wallet compared to the number of $100 bills missing from his grandmother's file cabinet. Fourth, Zachary did not report to the police that his grandmother took his money. These oral findings were later formalized into written findings.

During the disposition hearing, defense counsel asked the trial court to consider a suspended sentence under "Option B" of the juvenile sentencing statute. In response, the State argued:

---

[2] We find no evidence to support this finding.

MR. LEHMAN: And your Honor . . . I would note the court specifically to section (3) of . . . Option B . . . which [says] an offender is ineligible for a suspended disposition under the section if the offender is . . . 14 years of age or older and is adjudicated on [one] or . . . more [of the] following offenses—I would note that the defendant was born in May of 2000, this offense was in October 2015 so he would have been—15 at that point . . . and turn down to section (3) where it lists [several offenses including] residential burglary. He was specifically found to [have] committed the [offense] of residential burglary. It's specifically listed in the statute as an ineligible offense . . . for an Option B.

RP (Feb. 10, 2016) at 8.

The trial court agreed, and concluded as a matter of law that under RCW 13.40.0357(3)(b)(iii), Zachary's residential burglary adjudication rendered him ineligible for the Option B alternative. The court sentenced Zachary to 52 to 65 weeks of confinement for burglary, plus 15 to 36 weeks of confinement for theft, to be served consecutively.

## LAW AND ANALYSIS

A.    CLAIM OF INEFFECTIVE ASSISTANCE OF COUNSEL

Zachary argues he received ineffective assistance of counsel because his attorney failed to object to his grandmother's statement that her mother said she saw Zachary going around the outside of the house.

The Sixth Amendment to the United States Constitution guarantees defendants the right to legal counsel in criminal trials. Like the federal constitution, Washington's

6

Constitution also grants an accused, in a criminal prosecution, the right to appear by counsel. CONST. art. I, § 22. The right to counsel under the state and federal constitutions are coextensive. *State v. Long*, 104 Wn.2d 285, 288, 705 P.2d 245 (1985).

To meaningfully protect an accused's right to counsel an accused is entitled to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Courts apply a two pronged test to determine if counsel provided effective assistance: (1) whether counsel performed deficiently, and (2) whether the deficient performance prejudiced the defendant. *Id.* at 687. If a defendant fails to establish one prong of the test, this court need not address the remaining prong. *State v. Hendrickson*, 129 Wn.2d 61, 78, 917 P.2d 563 (1996). This is a mixed question of law and fact, reviewed de novo. *Strickland*, 466 U.S. at 698.

To satisfy the first prong, the defendant must show that, after considering all the circumstances, counsel's performance fell below an objective standard of reasonableness. *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). The burden is on the defendant to show deficient performance. *State v. Grier*, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011). This court gives great deference to trial counsel's performance and begins the analysis with a strong presumption counsel performed effectively. *State v. West*, 185 Wn. App. 625, 638, 344 P.3d 1233 (2015).

7

Zachary fails to establish that his attorney's performance was deficient because Teresa's statement was not hearsay and, therefore, not objectionable. A statement must be offered for its truth to be considered hearsay. *State v. Edwards*, 131 Wn. App. 611, 614, 128 P.3d 631 (2006); *State v. Post*, 59 Wn. App. 389, 394-95, 797 P.2d 1160 (1990), *aff'd*, 118 Wn.2d 596, 826 P.2d 172 (1992). A statement does not qualify as hearsay if it is offered for the purpose of showing why someone acted as they did. *Post*, 59 Wn. App. at 394-95.

Here, the State asked Teresa what else she noticed about her office. The anticipated answer was that her office window was not locked. But instead of answering the question directly, Teresa first explained why she went to check her window. She explained her mother had seen Zachary going around outside of the house. As mentioned previously, the State did not argue in closing that Teresa's mother saw Zachary going around outside of the house. This is probably because the State understood Teresa's statement was admissible only for the limited purpose of explaining why she checked her office window.

In the context of the question and the answer, and the lack of any testimony of *when* Zachary was seen going around outside the house, an objection to the testimony would have been overruled. Defense counsel could presume that the trial court—versed

in the rules of evidence—would consider Teresa's statement only for its proper purpose of explaining why Teresa checked her office window. For this reason, Zachary has not established that defense counsel's failure to object constituted deficient performance.[3]

2.    CLAIM OF DISPOSITIONAL ERROR

Zachary also argues the trial court incorrectly interpreted RCW 13.40.0357 when it ruled he was ineligible for a suspended disposition under juvenile offender sentencing standards "Option B: Suspended Disposition Alternative." Under Option B, the trial court may impose a standard range disposition and suspend confinement on the condition that the juvenile offender attend a treatment or educational program. The State concedes the trial court erred when it concluded it lacked discretion to consider suspending Zachary's confinement. We accept this concession and also explain why the concession is appropriate.

Option B in RCW 13.40.0357 states:

> (3) An offender is ineligible for the suspended disposition option under this section if the offender is:
>     . . . .
> (b) Fourteen years of age or older and is adjudicated of one or more of the following offenses:
>     . . . .

---

[3] We, in addition to our dissenting brother, are troubled that the trial court misconstrued this portion of Teresa's testimony *and* considered it as substantive evidence. But the arguments raised on appeal do not allow us to resolve those issues.

>    (iii) Assault in the second degree (RCW 9A.36.021), extortion in the first degree (RCW 9A.56.120), . . . *residential burglary* (RCW 9A.52.025), burglary in the second degree (RCW 9A.52.030), drive-by shooting (RCW 9A.36.045), vehicular homicide (RCW 46.61.520), hit and run death (RCW 46.52.020(4)(a)), intimidating a witness (RCW 9A.72.110), violation of the uniform controlled substances act (RCW 69.50.401(2)(a) and (b)), or manslaughter 2 (RCW 9A.32.070), *when the offense includes infliction of bodily harm upon another or when during the commission or immediate withdrawal from the offense the respondent was armed with a deadly weapon.*

(Emphasis added.) At the disposition hearing, the State argued Zachary was ineligible to receive a suspended disposition because he was 15 and the trial court had adjudicated him of residential burglary. The trial court agreed.

We disagree. The last clause of the quoted statute is preceded by a comma. The comma acts as a modifier for each of the several listed offenses. Thus, for an offender adjudicated guilty of any of the several listed offenses to be ineligible for a suspended disposition, the offender must have *also* inflicted harm on another or been armed with a deadly weapon. The State presented no evidence that Zachary either inflicted harm on another or was armed with a weapon. The trial court, therefore, erred when it concluded as a matter of law that Zachary was ineligible for a suspended disposition.

Generally, a sentence within the standard range is not subject to appellate review. RCW 9.94A.585(1); *State v. Ammons*, 105 Wn.2d 175, 182, 713 P.2d 719, 718 P.2d 796 (1986). However, a defendant may appeal the procedure the trial court followed when

10

imposing a sentence. *State v. Knight*, 176 Wn. App. 936, 957, 309 P.3d 776 (2013).

While no defendant is entitled to an exceptional sentence below the standard range, every

defendant is entitled to ask the trial court to consider such a sentence and to have the

alternative actually considered. *State v. Grayson*, 154 Wn.2d 333, 342, 111 P.3d 1183

(2005). These concepts are fully applicable to juvenile proceedings. Therefore, we

remand to the trial court for a new disposition hearing so it may suspend the remainder of

Zachary's sentence if it so wishes.

Affirmed and remanded for a disposition hearing.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Lawrence-Berrey, J.

I CONCUR:

_____
Korsmo, J.

11

No. 34078-3-III

FEARING, C.J. (dissenting) — At trial, Zachary Roy suffered ineffective assistance of counsel. His counsel's failure to object to hearsay testimony and to object to the use by the trial court of hearsay testimony as substantive evidence undermines confidence in Roy's conviction. I would grant Roy a new trial.

This prosecution arises from the theft of numerous hundred dollar bills from the office file cabinet of Teresa Roy. Teresa is the grandmother of appellant Zachary Roy. Teresa conducted a towing business and maintained her business office in her home. Teresa instructed Zachary not to enter the office without her permission or within her presence. On the day of the theft, the door from the office to the rest of the house was locked.

Beginning in 2014, Zachary Roy resided with his grandmother. Teresa Roy's mother, Zachary's great-grandmother, also lived in the residence. On October 9, 2015, while Zachary attended school, Teresa smelled marijuana emanating from her grandson's bedroom. She entered Zachary's bedroom and found a marijuana container and Zachary's wallet on his bed. Teresa opened the wallet and found $882 in bills.

Teresa Roy left Zachary's bedroom to examine her office file cabinet, where she stored money earned from her business. She discovered multiple hundred dollar bills missing in the cabinet. She also noticed an unlocked office window and observed dishevelment inside the room. Teresa reviewed her invoices and bank deposit slips and

tallied a significant cash deficit since her last visit to the bank. At some unidentified time, Teresa Roy's mother, Zachary's great-grandmother, informed Teresa that Zachary walked around the house the morning of the missing bills.

The State of Washington charged juvenile Zachary Roy with second degree theft and residential burglary. During the bench trial, Teresa Roy testified for the State. The critical trial passage from Teresa Roy's testimony reads:

> Q  And, did you notice anything else about the condition of your room?
> A  Yeah. I checked—I went around and tried to figure out—*because my mother had said he'd [Zachary had] been going around the outside of the house, to figure out how he would have got in.* And, that's when I found that the window looked locked but it wasn't. So,—I have since put a stick in that window, too.

Report of Proceedings (RP) (Feb. 5, 2016) at 24 (emphasis added). Zachary Roy's lawyer registered no objection to this testimony.

Zachary Roy testified in his own defense. He declared that he did not steal the money his grandmother found in his wallet. He saved the money earned by selling his gaming system and accumulating his allowance. He testified he later converted the money to big bills.

The juvenile court found Zachary Roy guilty of second degree theft and residential burglary. In its oral ruling, the trial court noted that no piece of evidence by itself was sufficient to convict, and the evidence supporting a conviction was circumstantial. But

when considering all evidence in a bundle, the evidence established the guilt of Zachary

beyond a reasonable doubt. The trial court commented:

> I agree that every bit of evidence that I saw and heard today was circumstantial evidence. There were certainly no eyewitnesses.
> I agree with [defense counsel] that when you look at each thing separately you can create reasonable doubt. But when I tie all these things together to make a nice little rope of evidence, so to speak, I do find that it all adds to concluding that there was—that there is no reasonable doubt that Mr. Roy committed theft in the second degree and residential burglary.

RP (Feb. 5, 2016) at 68.

The juvenile court mentioned three fragments of evidence. First, Zachary failed to

report to law enforcement any taking of money from his wallet. Second, the sale of a

gaming system and the saving of an allowance did not account for $882 in Zachary's

wallet. Third, Zachary's great-grandmother saw Zachary outside the house on the day of

the theft. In its oral ruling, the trial court commented:

> Your great grandmother saw some—saw you outside that day. She didn't testify today but there was evidence presented that she had seen that.

RP (Feb. 5, 2016) at 68-69.

The trial court's finding of fact 8 reads:

> Teresa Roy's mother, Respondent's great-grandmother, observed Respondent running around the outside of the residence near the office window prior to Respondent going to school.

Clerk's Papers at 11. The State prepared the findings of fact on its stationery.

3

Zachary Roy attacks his convictions by arguing ineffective assistance of counsel. He contends trial counsel ineffectually failed to object to inadmissible testimony from Teresa Roy. To repeat, Teresa testified that her mother, who remains unnamed, told her that Zachary walked around the outside of Teresa's house the morning of the theft. Roy challenges the testimony as hearsay.

The Sixth Amendment to the United States Constitution guarantees an accused the right to legal counsel in criminal trials. Like the federal constitution, Washington's Constitution also grants an accused, in a criminal prosecution, the right to appear by counsel. WASH. CONST. art. I, § 22. The right to counsel under the state and federal constitutions are coextensive. *State v. Long*, 104 Wn.2d 285, 288, 705 P.2d 245 (1985).

The constitution guarantees the accused more than an attorney who sits next to him at counsel table. To meaningfully protect an accused's right to counsel, an accused is entitled to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). The right to effective assistance of counsel is recognized not for its own sake, but for the effect it has on the ability of the accused to receive a fair trial. *State v. Webbe*, 122 Wn. App. 683, 694, 94 P.3d 994 (2004).

Courts apply a two pronged test to determine if counsel provided effective assistance: (1) whether counsel performed deficiently, and (2) whether the deficient performance prejudiced the defendant. *Strickland v. Washington*, 466 U.S. at 687. To

4

satisfy the first prong of deficient performance, the accused must show that, after considering all the circumstances, counsel's performance fell below an objective standard of reasonableness. *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). The defendant carries the burden to show deficient performance. *State v. Grier*, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011). This court gives great deference to trial counsel's performance and begins the analysis with a strong presumption counsel performed effectively. *State v. West*, 185 Wn. App. 625, 638, 344 P.3d 1233 (2015).

In general, trial strategy and tactics cannot form the basis of a finding of deficient performance. *State v. Johnston*, 143 Wn. App. 1, 16, 177 P.3d 1127 (2007). The decision of when or whether to object to trial testimony is a classic example of trial tactics. *State v. Madison*, 53 Wn. App. 754, 763, 770 P.2d 662 (1989). Nevertheless, the decision not to object must be the result of a deliberate tactical decision. *In re Personal Restraint of Davis*, 152 Wn.2d 647, 714, 101 P.3d 1 (2004); *State v. Sexsmith*, 138 Wn. App. 497, 509, 157 P.3d 901 (2007). A criminal defendant can rebut the presumption of reasonable performance by demonstrating that no conceivable legitimate tactic explains counsel's performance. *In re Personal Restraint of Caldellis*, 187 Wn.2d 127, 141, 385 P.3d 135 (2016); *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004). Not all defense counsel's strategies or tactics are immune from attack. *In re Personal Restraint of Caldellis*, 187 Wn.2d at 141. The relevant question is not whether counsel's choices

5

were strategic, but whether they were reasonable. *Roe v. Flores-Ortega*, 528 U.S. 470, 481, 120 S. Ct. 1029, 145 L. Ed. 2d 985 (2000); *State v. Grier*, 171 Wn.2d at 34 (2011).

Courts cannot exhaustively define the obligations of counsel or form a checklist for judicial evaluation of attorney performance. *Strickland v. Washington*, 466 U.S. at 688 (1984). Nevertheless, effective representation entails certain basic duties, such as the overarching duty to advocate the defendant's cause and the more particular duty to assert such skill and knowledge as will render the trial a reliable adversarial testing process. *Strickland v. Washington*, 466 U.S. at 688; *In re Personal Restraint of Yung-Cheng Tsai*, 183 Wn.2d 91, 100, 351 P.3d 138 (2015).

Zachary Roy pegs his argument of ineffective assistance of counsel to his trial counsel's failure to object to hearsay. Hearsay is an out-of-court statement offered in evidence to prove the truth of the matter asserted. ER 801(c). Although hearsay is generally inadmissible, a statement may be offered for its truth to consider it hearsay. *State v. Edwards*, 131 Wn. App. 611, 614, 128 P.3d 631 (2006); *State v. Post*, 59 Wn. App. 389, 394-95, 797 P.2d 1160 (1990), *aff'd*, 118 Wn.2d 596, 826 P.2d 172 (1992). A statement does not qualify as hearsay if used for the purpose of showing why someone acted as they did. *State v. Post*, 59 Wn. App. at 394-95. Nevertheless, the purpose behind a person's actions must be relevant to the issues posed in the litigation. Out-of-court declarations may be admitted to explain a witness's conduct only if the conduct is relevant to a material issue in the case; otherwise, such declarations remain hearsay.

6

*State v. Hudlow*, 182 Wn. App. 266, 278, 331 P.3d 90 (2014); *State v. Johnson*, 61 Wn. App. 539, 545, 811 P.2d 687 (1991). Hearsay is always hearsay, but admissible hearsay, like relevance, depends on the issues in the case. *State v. Hudlow*, 182 Wn. App. at 278.

I agree with Zachary Roy that his grandmother presented inadmissible hearsay. Teresa Roy repeated, in court, comments uttered by her mother outside of court. The mother did not testify at trial to her percipient observations.

The majority asserts that the State offered Teresa Roy's testimony to explain why Teresa examined the office window, not to prove the truth of Zachary Roy's great-grandmother's statement. The State argues that the testimony was not presented to prove that Zachary walked around the home on the morning of the missing $100 bills. The record, however, does not support this assertion.

The State never asked Teresa Roy to repeat her mother's statement or to explain why she checked the office window. The State simply asked: "And, did you notice anything else about the condition of your room?" RP (Feb. 5, 2016) at 24. Without being asked, Teresa Roy volunteered that her mother told her that Zachary had walked outside around the residence. The State never informed the trial court that it introduced the evidence solely for the purpose of explaining Teresa's conduct. The State did not purposely introduce the great-grandmother's statement as evidence, let alone purposely introduce the evidence to explain the statement's impact on the listener. Zachary's counsel was ineffective not only for failing to object to the testimony as hearsay but also

7

to object as nonresponsive to the State's question.

Even assuming the State introduced Teresa Roy's repeating of her mother's remark for the purpose of the remark's effect on Teresa, the remark lacked relevance. The sole issues at trial were whether Zachary Roy stole money from Teresa Roy's office and whether Zachary entered the office without permission from Teresa. Teresa's observation of the open window held relevance to both charges. Nevertheless, Teresa could testify to her inspection of the window without stating what prompted her inspection. Zachary never denied that Teresa lacked a reason for examining the window or that she examined the window. Teresa Roy's reason for examining the window did not make Zachary's guilt any more or less probable unless the great-grandmother's remark was used to prove the truth that Zachary walked around the house, which use the hearsay rule barred.

As noted by our neighboring state's high court, in limited circumstances inadmissible hearsay might be admissible to show the effect on the listener, but generally the evidence submitted is not relevant. *State v. Parker*, 157 Idaho 132, 334 P.3d 806, 819 (2014). The effect on the listener exception is often used as a ruse to put inadmissible evidence before the jury improperly. *State v. Parker*, 334 P.3d at 819. In *State v. Field*, 144 Idaho 559, 165 P.3d 273 (2007), a jury convicted a defendant of lewd conduct toward and sexual battery of a minor. The Idaho Supreme Court reversed because of the use of hearsay testimony. The court wrote:

8

Originally, the State argued the statements were not hearsay because they were not introduced to prove the truth of the matter asserted, only to show the effect on listener—that the statement to S.P. led to making statements to H.P.'s mother which led to a police report. However, the State has never shown that the exact statements prompting the mother to call the police are relevant—of consequence to determining whether Field's guilt is more or less probable. *See* I.R.E. 402. Thus, they were not properly admitted on those grounds.

*State v. Field*, 165 P.3d at 281 (footnote omitted).

The majority accurately observes that the State never mentioned the great-grandmother's comment during the State's closing argument. The majority omits, however, that the State prepared the findings of fact and included the great-grandmother's remark as substantive evidence of guilt in the findings. If the State introduced Zachary Roy's great-grandmother's out-of-court statement solely for the purpose of explaining Teresa Roy's conduct and not for truth of matter asserted inside the statement, the State would have taken steps beyond omitting any reference to the great-grandmother's statement in closing. The State would not have allowed Zachary to be convicted in part on this evidence. The government may not introduce evidence in the guise of the effect on the listener and then employ the evidence as substantive evidence of guilt. *State v. Parker*, 334 P.3d at 819 (2014).

A prosecutor has a duty to ensure only competent evidence is submitted to the jury. *State v. Ho K. Duong*, 292 Kan. 824, 257 P.3d 309, 316 (2011). The government holds a legal obligation to ensure that evidence admitted about a person's character or

trait is not used for the purpose of proving action in conformity therewith on a particular occasion. *United States v. Farmer*, 583 F.3d 131, 135 (2d Cir. 2009). The government may not use impeachment as a guise for submitting to the jury substantive evidence that is otherwise unavailable. *United States v. Morgan*, 505 F.3d 332, 340 (5th Cir. 2007). A natural extension of these principles is to oblige the State to prevent the use of evidence introduced for other purposes, such as its effect on the listener, as evidence of guilt.

Although objections to testimony may be tactical decisions, I fathom no legitimate reason for trial counsel's failure to object to Teresa Roy's hearsay testimony. Because Zachary Roy underwent a bench trial, a failure to object could not be based on a supposed tactic of not wishing to offend a jury by repeated objections. The State did not schedule the great-grandmother for testimony and so the State would not be successful in introducing the evidence through another witness. The hearsay testimony was nonresponsive to the question posed by the State, such that the testimony may have surprised trial defense counsel. Nevertheless, counsel should have moved to strike the testimony once Teresa uttered the irrelevant hearsay.

The majority writes that trial counsel may not have objected to Teresa Roy's testimony because counsel recognized the testimony to be admissible for the purpose of the effects on Teresa. Nevertheless, as already observed, the law would not permit introduction of the great-grandmother's comment through Teresa because the effect of the comment on Teresa bore no relevance to the trial issues.

10

If, as the majority suggests, trial counsel withheld an objection to the testimony on the mistaken belief that the evidence could be admitted to show the effect on Teresa Roy, defense counsel should have argued to the trial court that the great-grandmother's comment could not be used to establish guilt. When the trial court rendered its oral ruling at the conclusion of trial and announced its reliance on the great-grandmother's remark as substantive evidence, defense counsel should have informed the court of the error. When trial counsel saw the placement of the great-grandmother's statement in the written findings of fact, counsel should have objected.

The majority notes that Zachary Roy does not argue on appeal that his trial counsel performed inadequately by failing to object to use of the great-grandmother's remark as substantive evidence. Therefore, the majority refuses to address the ineffectiveness of counsel because of a failure to limit the great-grandmother's remark to its impact on the listener. The majority's position is overly technical. The failure to object to use of the hearsay testimony as substantive evidence arises from the failure to originally object to the testimony as hearsay. The two errors intertwine. Under RAP 1.2(a), this court liberally interprets the appellate rules to facilitate the decision of cases on their merits. Under RAP 1.2(c), this court may waive its rules to serve the ends of justice. Appellate courts have inherent authority to consider issues not raised by the parties if necessary to serve the ends of justice. *State v. Aho*, 137 Wn.2d 736, 740-41, 975 P.2d 512 (1999); *State v. Carter*, 138 Wn. App. 350, 368, 157 P.3d 420 (2007).

11

The majority also has the option to ask the parties for additional briefing if the majority does not deem ineffective assistance of counsel for failing to object to use of hearsay as substantive evidence is related to the failure to object to the hearsay. RAP 12.1(b). The majority's refusal to entertain this alternative basis for ineffective assistance of counsel relegates the parties to more litigation over whether Zachary Roy's appellate counsel was ineffective.

To establish ineffective assistance of counsel, Zachary Roy must also establish that the ineffective assistance prejudiced him. Prejudice is established when there is a reasonable probability that, but for counsel's errors, the result of the trial would have been different. *In re Personal Restraint of Brett*, 142 Wn.2d 868, 873, 16 P.3d 601 (2001). A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland v. Washington*, 466 U.S. at 694 (1984); *In re Personal Restraint of Caldellis*, 187 Wn.2d at 141 (2016).

The inadmissible hearsay testimony in this case was central to the State's case. The trial court recognized the State's case as constructed on circumstantial evidence. Each piece of evidence viewed separately did not convict Zachary Roy beyond a reasonable doubt. But when viewing the evidence as a whole, the evidence sufficed to convict. A critical building block for the conviction was Teresa Roy's testimony that her mother saw Zachary running around the house that morning. The trial court did not employ this testimony simply as an explanation for why Teresa examined the office

12

No. 34078-3-III
*State v. Roy* (dissent)

window. The trial court adopted the testimony as substantive evidence and placed the evidence in a finding of fact.

The inadmissible hearsay was important, if not vital, to guilt beyond a reasonable doubt. Thus, my confidence in the outcome is undermined.

The majority would allow a defendant's guilt or innocence to hinge on the skill of his attorney. In turn, the majority ignores the purposes behind the constitutional guarantee of effective assistance of counsel. Those purposes include an advocate for the accused and a fair trial. Trial counsel defaulted on his role as advocate. Zachary Roy lacked a fair trial when the juvenile court convicted him on impermissible evidence. As written by the United States Supreme Court:

> The right to the effective assistance of counsel is thus the right of the accused to require the prosecution's case to survive the crucible of meaningful adversarial testing. When a true adversarial criminal trial has been conducted—even if defense counsel may have made demonstrable errors—the kind of testing envisioned by the Sixth Amendment has occurred. But if the process loses its character as a confrontation between adversaries, the constitutional guarantee is violated.

*United States v. Cronic*, 466 U.S. 648, 656-57, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984) (footnotes omitted).

I RESPECTFULLY DISSENT:

Fearing, C.J.

13